PRESENT: Koontz, Kinser, Lemons, Goodwyn and Millette, JJ.,
and Carrico and Russell, S.JJ.

JUDICIAL INQUIRY AND REVIEW
COMMISSION OF VIRGINIA
                                    OPINION BY
v.  Record No. 090845        JUSTICE LEROY F. MILLETTE, JR.
                                  November 5, 2009

RAMONA D. TAYLOR, JUDGE OF
THE SECOND JUDICIAL DISTRICT


     The Judicial Inquiry and Review Commission ("the

Commission") filed the present complaint against Ramona D.

Taylor, Judge of the Second Judicial District, pursuant to the

original jurisdiction of this Court set forth in Article VI,

§ 10 of the Constitution of Virginia and Code § 17.1-902.  The

Commission asserted that its charges against Judge Taylor for

allegedly violating the Canons of Judicial Conduct ("the

Canons") are well founded in fact and are of sufficient

gravity to constitute the basis for censure by this Court.

                I. FACTS AND PROCEEDINGS


     On January 13, 2009, the Commission issued a Notice

establishing formal charges against Judge Taylor that she had

engaged in misconduct or engaged in conduct prejudicial to the

proper administration of justice while serving as a judge in

the Juvenile and Domestic Relations District Court for the

City of Virginia Beach ("the juvenile and domestic relations

court").  Judge Taylor was charged with alleged violations of Canons 1, 2, 2A, and 3B(2).

The Commission alleged that on May 2, 2007, at the conclusion of an adjudicatory hearing on a misdemeanor assault charge against a 15 year old defendant ("K.M."), who was not then in custody, Judge Taylor found K.M. guilty following his plea of "not innocent."  During the adjudicatory hearing, the Commission alleged, "someone in the courtroom audience blurted out that [K.M] had used a racial epithet toward the victim of the assault," and Judge Taylor called witnesses to the stand to testify about the use of the racial epithet.  According to the Commission, Judge Taylor found that K.M. represented a risk of harm to the community, and remanded him to custody pending a sentencing hearing scheduled for May 24, 2007.

The Commission further alleged that Judge Taylor denied K.M.'s request for immediate sentencing so that an appeal could be noted, and ordered that a social history be compiled for the sentencing hearing.  In addition, the Commission alleged that Judge Taylor denied K.M.'s May 2, 2007 written motion for bond and release pending the sentencing hearing by order entered on May 3, 2007 that expressly stated it was "an interlocutory, non-appealable order" ("May 3rd order").

The Commission further contended that, by letter from his counsel dated May 4, 2007, K.M. sought reconsideration of the

2

May 3rd order.  The Commission alleged that K.M.'s four-page letter outlined K.M.'s factual and legal argument in support of bond, his appeal of the denial of bond to the next higher court, and his request for an immediate sentencing so that he could immediately appeal, because otherwise denying bail and imposing incarceration would make K.M.'s right to a de novo appeal meaningless.  However, according to the Commission, Judge Taylor denied reconsideration by an order in which she maintained her position that the denial of K.M.'s motion for bond and release was interlocutory and non-appealable ("May 8th order").[1]  The Commission alleged that when K.M. attempted to appeal his case, the clerk of the juvenile and domestic relations court ("the clerk of court" or "clerk") refused to process the appeal, and K.M. filed a petition for writ of mandamus against the clerk in the Circuit Court for the City of Virginia Beach ("the circuit court").  The writ of mandamus, which was granted by order dated May 11, 2007, directed the clerk of court to process an appeal of Judge Taylor's order.  After a bond hearing also conducted on May 11th, the circuit court released K.M. to the custody of his parents.

---

[1] Judge Taylor entered a "Corrective Order" containing the same language that "[t]his order is an interlocutory, nonappealable order" on May 8, 2007 nunc pro tunc May 3, 2007.

In Judge Taylor's answer to the Notice of formal charges, she maintained that she did not recall whether K.M.'s counsel requested an immediate sentencing. Judge Taylor admitted that she entered the May 3rd order denying K.M.'s motion for bond and release pending the sentencing hearing, and that K.M. requested reconsideration of that order. However, Judge Taylor denied that K.M.'s counsel cited to authority that clearly gave K.M. the right to appeal the decision denying bail and asserted that the authority cited by K.M.'s counsel is "subject to contrary legal interpretations with regard to its applicability to juvenile defendants detained post-adjudication and pre-disposition."

Judge Taylor admitted that at the mandamus hearing, the attorney for the clerk of court asserted that the clerk was "under a direct order by [Judge Taylor] as the Chief Judge not to process the defendant's appeal," but averred that the attorney incorrectly stated the capacity in which Judge Taylor served when she advised the clerk regarding the appealability of the May 3rd order. Judge Taylor asserted that she was functioning as the presiding judge, not as the chief judge, at all times when addressing the clerk regarding the appealability of the May 3rd order. Judge Taylor therefore requested that the formal charges asserted in the Commission's Notice be dismissed.

4

On March 10, 2009, the Commission conducted an evidentiary hearing on the charges, at which time Judge Taylor was present and represented by counsel. The Commission members voted unanimously to bifurcate the hearing as follows: (1) evidence about a violation of the Canons, and if the Commission found a violation, then (2) other evidence regarding the appropriate sanction, if any.

As part of the evidence before the Commission, the parties stipulated that when K.M.'s counsel tried to file a notice of appeal to the May 3rd order, the deputy clerk advised Judge Taylor that K.M.'s counsel was attempting to file a notice of appeal and Judge Taylor "confirmed that the order by its express terms was not appealable, but did not state to the deputy clerk that the notice of appeal should not be accepted." The parties further stipulated that "[t]he deputy clerk then informed [K.M.'s counsel] that the order was not appealable and, therefore, the notice of appeal would not be accepted."

Judge Taylor testified that at the conclusion of the May 2, 2007 hearing on K.M.'s misdemeanor assault charge, she ordered K.M. securely detained "in order to safeguard the community" and ordered a social history, which is a complete background investigation on K.M. Judge Taylor testified that

5

she did not recall K.M.'s counsel's request for a final appealable order.

Judge Taylor testified that in ruling on K.M.'s motion for reconsideration, she said to his counsel:

> [W]hat I'm going to do is I'm going to put all of my authority [in the order] to make sure that . . . just in case you get a Circuit Court judge who we were talking about, you know, perhaps a Circuit Court judge shooting from the hip, and that was the expression that I had used, thinking that a lot of times they were busy, they had a very hectic docket, and because we deal with these juvenile codes so frequently, I wanted to make sure that the Circuit Court judge was aware I was relying upon the Juvenile Code.

Judge Taylor stated that when the deputy clerk asked her whether the May 3rd order was appealable, she "may have said something like, Well, I've already addressed that in my order, and that was the end of it." Later in the hearing, Judge Taylor testified that when the deputy clerk asked her if the

order was appealable, Judge Taylor said, "[a]s my order states, no. I don't believe it's appealable."

When Judge Taylor was asked at the hearing if it was apparent to her that the deputy clerk inquired into the May 3rd order's appealability because the deputy clerk was trying to decide whether to process the appeal, Judge Taylor replied, "[y]es." Nevertheless, Judge Taylor testified that it was the deputy clerk's responsibility to consult the clerk of court on how to proceed, and if doubt remained, it was the clerk's office's responsibility to call this Court to obtain guidance on the matter.[2] Judge Taylor testified that she would not

---

[2] Although Judge Taylor repeatedly asserted that the clerk's office should have contacted the Supreme Court of Virginia to obtain guidance, she was presumably referring to the Office of the Executive Secretary (OES), which would be the appropriate administrative department of this Court to contact under these circumstances. OES provides administrative support for all of the courts and magistrate offices within the Commonwealth. Office of the Executive Secretary of the Supreme Court of Virginia, The Official Website for the Supreme Court of Virginia, Court Administration—Office of the Executive Secretary (OES), http://www.courts.state.va.us/courtadmin/aoc/oes/home.html (last visited Oct. 22, 2009). Within the OES, the Department of Judicial Services (DJS) serves as the liaison between the judiciary's administrative offices and the courts throughout the Commonwealth, providing administrative services through publications, trainings, field visits, and the research and support of various programs. Id. (follow "Judicial Services" hyperlink to http://www.courts.state.va.us/courtadmin/aoc/djs/home.html (last visited Oct. 22, 2009)). The Juvenile and Domestic Relations District Court Services division of the DJS provides guidance and assistance to juvenile and domestic relations

instruct the clerk's office on what measures to take, as "that is not [her] function as the judge" and "frankly, as the judge, [she does not] get involved in the mechanics of appeals." Judge Taylor reiterated her position by stating: "What I have stated and what I sincerely believe is that my duties as the presiding judge were to decide the case; my duties were finished." In Judge Taylor's opinion, the clerk's office had

the responsibility, independent of the language in the May 3rd order, to accept or deny K.M.'s appeal, depending on the guidelines the clerk's office received from this Court [OES].

Judge Taylor described her May 8th order denying K.M.'s motion to rehear as merely a way to "red flag that there was an appealability problem" for the circuit court. Judge Taylor stated, "I don't believe that the legislators, for whatever reason, intended juveniles to be included within the appeal provisions for bond determinations under 19.2-124." Judge Taylor continued, "[s]o for whatever reason, juveniles, I believe, are treated separately," as she believed Code §§ 19.2-124 and 19.2-319 are inapplicable to juvenile

---

district court judges and clerks on caseflow management and case processing, among other things. Id. We therefore

detention.  Judge Taylor testified that "[a]s the judge interpreting the statute, what [she] indicated to [K.M.'s] attorney was that [she] did not believe that with regard to where [K.M.] was in the proceeding, that he had a right to appeal his detention status."  According to Judge Taylor, "[i]t was a legal determination that because of his status, post-adjudication/pre-disposition, that he didn't have the right to appeal."

Judge Taylor maintained that when she entered the May 3rd order she "fully expected" K.M.'s counsel to appeal it.  For that reason, Judge Taylor contended that she was merely "flagging" the issue of the appealability of the order for the circuit court, but did not "rule" on that issue.  Judge Taylor explained:

> I wanted the Circuit Court judge to know I had a concern about it.  So by saying this order is an interlocutory, non-appealable order, that wasn't a ruling because that was really for the Circuit Court to look at and to decide whether this case should be properly appealed to that court.

reference OES in brackets when Judge Taylor refers to this Court in relevant portions of her argument.

9

(Emphasis added.)

After the hearing, the Commission determined that Judge Taylor violated Canons 1, 2A, and 3B(2), and "that the charges set forth in the Notice were well-founded and of sufficient gravity to constitute the basis for censure." The Commission made an express finding by clear and convincing evidence that Judge Taylor had acted intentionally to thwart K.M.'s attempt to appeal from the order that denied his request for bail.

The Commission then considered additional evidence and argument regarding the appropriate sanction. In determining whether to file a formal complaint in this Court pursuant to Article VI, § 10 of the Constitution of Virginia and Code § 17.1-902, the Commission considered two exhibits pertaining to Judge Taylor's two prior informal contacts with the Commission. Judge Taylor's counsel objected to the exhibits, because (1) the informal contacts had resulted in dismissals, arguing that dismissals are inappropriate for consideration by the Commission, and (2) the exhibits were irrelevant and more prejudicial than probative. The Commission received the exhibits into evidence "for the purpose of final disposition." Upon deliberation, the Commission decided that the charges of violations of the Canons were well founded and of sufficient

10

gravity to constitute the basis for censure and filed a complaint against Judge Taylor in this Court.

Judge Taylor filed a post-hearing motion to dismiss and for other relief, seeking reconsideration and dismissal of the complaint on the basis that the evidence at the hearing revealed "nothing more tha[n] mere legal errors which cannot support a finding that any of the pertinent Canons of Judicial Conduct were violated." Judge Taylor asserted that there was "no evidence in the record" that she "knowingly and/or willingly violated any statutes or legal rights," and that "she did not knowingly and/or willingly commit any legal errors."

Judge Taylor also requested that the Commission reconsider the admission and use of documents relating to "prior contacts" between Judge Taylor and the Commission, contending that there is no legal basis for the use of such documents. Judge Taylor argued that any slight probative value of the documents is substantially outweighed by their prejudicial effect, the use of such documents violates her right of confidentiality in the Commission's review process,

and denies her equal protection and due process rights under the United States and Virginia Constitutions.[3]

Judge Taylor also asserted that an email written by the chairman of the Commission, Judge Larry D. Willis, Jr., to the juvenile and domestic relations court appeared to have "prompted and/or played a role" in one of Judge Taylor's prior informal contacts with the Commission. Therefore, Judge Taylor argued that Judge Willis should have recused himself.

Additionally, Judge Taylor argued that as applied to the facts of the complaint against her, the Canons are unconstitutionally vague and without appropriately definite standards, resulting in an arbitrary and capricious process.

The Commission denied Judge Taylor's motion by order dated April 14, 2009. In an accompanying letter, which addressed the admission of documents relating to prior contacts, the Commission stated that, pursuant to Code § 17.1-913, whatever record the Commission files with its complaint in this Court becomes public. The Commission also maintained that certain exhibits would not be sealed because they, or the information they contained, had already become public as part of the circuit court file.

---

[3] Judge Taylor has abandoned her equal protection argument in this Court.

On April 28, 2009, the Commission filed its complaint with this Court. In her answer to the Commission's complaint, Judge Taylor alleged that the evidence in the record was insufficient to establish that she "knowingly and/or willingly violated any statutes, legal rights and/or [the] [C]anons." In addition, Judge Taylor alleged that there is no factual basis for any findings against her, that her motion to dismiss and for other relief is well-founded, and that there is insufficient basis for a censure.

## II. CANONS OF JUDICIAL CONDUCT

The relevant portions of the Canons at issue in this case are:

Canon 1. A Judge Should Uphold the Integrity and Independence of the Judiciary.

A. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of these Canons are to be

construed and applied to further that objective.

Canon 2. A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities.

A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

. . . .

Canon 3. A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.

. . . .

B. Adjudicative Responsibilities.-

. . . .

(2) A judge shall be faithful to the law and maintain professional competence in it. . . .

14

Va. Sup. Ct. R., Part 6, § III, Canons 1, 2, and 3.

## III. ANALYSIS

The Commission's filing of a formal complaint in this Court triggered our duty to conduct a hearing in open court for the purpose of determining whether Judge Taylor "engaged in misconduct while in office, or . . . has engaged in conduct prejudicial to the proper administration of justice." Va. Const. art. VI, § 10.

In conducting the hearing on the formal complaint filed by the Commission, this Court considers the evidence and makes factual determinations de novo. The Commission must prove its charges in this Court by clear and convincing evidence. The term "clear and convincing evidence" has been defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond

a reasonable doubt in criminal cases.  It does
not mean clear and <u>unequivocal</u>."

<u>Judicial Inquiry & Review Comm'n v. Lewis</u>, 264 Va. 401, 405, 568 S.E.2d 687, 689 (2002) (citations omitted).  Factual determinations, findings and opinions of the Commission are not accorded any particular weight nor deference.  <u>Judicial Inquiry & Review Comm'n v. Peatross</u>, 269 Va. 428, 444, 611 S.E.2d 392, 400 (2005).  If after conducting a de novo review of the record and hearing argument of counsel, we find clear and convincing evidence that the judge has engaged in misconduct while in office or has engaged in conduct prejudicial to the administration of justice, we shall censure the judge or remove the judge from office.  Va. Const. art. VI, § 10; <u>Judicial Inquiry & Review Comm'n v. Shull</u>, 274 Va. 657, 670, 651 S.E.2d 648, 656 (2007).

Judge Taylor presents us with four issues to consider:

(1)  Whether the record proves by clear and convincing evidence that Judge Taylor engaged in misconduct while in office or engaged in conduct prejudicial to the proper administration of justice sufficient to prove the charged violations of the Canons;

16

(2)  Whether the Canons, as applied to Judge Taylor and the record in this case, are sufficiently definite and certain for purposes of due process;

(3)  Whether it was lawful for the Commission to consider evidence of Judge Taylor's "prior contacts" with the Commission; and

(4)  Whether Judge Taylor is entitled to any relief based on the conflict/recusal issue addressed in her post-hearing motion to dismiss.

### A. Sufficiency of the Evidence

The Commission argues that the record proves by clear and convincing evidence that Judge Taylor engaged in misconduct while in office or in conduct prejudicial to the proper administration of justice.  As an initial matter, the Commission asserts that K.M. had the right to appeal Judge Taylor's denial of bail.  The Commission maintains that "it is a fundamental precept of Virginia criminal procedure that *all* decisions denying bail are appealable by the defendant, at least until such appeals reach this Court."  The Commission contends that all criminal cases involve either pretrial bail, the denial of which is appealable pursuant to Code § 19.2-124, or post-conviction bail in circuit court, the denial of which is appealable pursuant to Code § 19.2-319.  The Commission

17

further argues that because appeals from a district court conviction are de novo, a defendant remains in pretrial status for bail purposes throughout the district court proceedings. The Commission cites Code § 19.2-120(A) and (E), which state:

> A. A person who is held in custody <u>pending trial or hearing for an offense</u>, civil or criminal contempt, <u>or otherwise</u> shall be admitted to bail by a judicial officer, unless there is probable cause to believe that:
>
> 1. He will not appear for trial or hearing or at such other time and place as may be directed, or
>
> 2. His liberty will constitute an unreasonable danger to himself or the public.
>
> . . . .
>
> E. The judicial officer shall inform the person of his right to appeal from the order denying bail or fixing terms of bond or recognizance consistent with § 19.2-124.

18

(Emphasis added.) Furthermore, the Commission points out that Code § 19.2-124(A) provides that

> [i]f a judicial officer denies bail to a person, requires excessive bond, or fixes unreasonable terms of a recognizance under this article, the person may appeal therefrom successively to the next higher court or judge thereof, up to and including the Supreme Court of Virginia or any justice thereof where permitted by law.

According to the Commission, these statutes when read together make it clear that K.M. had a right to appeal Judge Taylor's denial of bond, as he remained within the status of "[a] person who is held in custody pending . . . hearing . . . or otherwise." Code § 19.2-120(A). The Commission asserts that K.M. falls within the definition of "person" contained in Code § 19.2-119: " '*Person*' means any accused, or any juvenile taken into custody pursuant to § 16.1-246." The Commission argues that nothing in the Code justified the exception Judge Taylor carved out for a juvenile held "post-adjudication/pre-disposition." The Commission contends there

is no plausible support in Virginia law for Judge Taylor's conclusion that a "no appeal zone" exists in the juvenile and domestic relations court when a juvenile is first taken into custody at the conclusion of the adjudicatory hearing and bail is denied pending a final disposition hearing.

The Commission argues that even if this Court determines Judge Taylor's actions were "mere legal error," this Court should not excuse the manner in which she "arrogated to herself the power to rule that her own decision was immune from appellate review."  At oral argument, the Commission asserted, "there's a difference between wrongly concluding that [the May 3rd order] wasn't appealable and ruling, putting in your order that it's not appealable and then taking action subsequent[ly] that effectively blocked the appeal." Additionally, the Commission contends this Court should not excuse Judge Taylor's refusal to retreat from her untenable position when given ample opportunity to do so.  The Commission avers that Judge Taylor violated the Canons by her clear misappropriation of judicial power, which constituted "conduct prejudicial to the proper administration of justice." Va. Const. art. VI, § 10.

The Commission asserts that this Court should reject Judge Taylor's contention that she did not "rule" that her order could not be appealed and that she included the

20

"nonappealable" language in the May 3rd order only to "flag" the issue for the circuit court. As support for this argument, the Commission points out that Judge Taylor referred to her action as a ruling in an email to her fellow juvenile and domestic relations court judges, in which Judge Taylor wrote:

> I found after an adjudicatory hearing that [K.M.] posed a substantial risk of harm to the community and ordered him to be securely detained pending disposition. [K.M.'s counsel] filed a motion the next day requesting that [K.M.] be released on bond. I denied that request and <u>ruled that the order was interlocutory and nonappealable. . . .</u> <u>I ruled that the order was not appealable</u> . . . .

(Emphasis added.) Also, the Commission asserts that in Judge Taylor's answer to the Notice of formal charges, she did not deny ruling that the order was nonappealable and did not at that time state that she merely flagged the issue for the circuit court.

The Commission argues that the clerk of court believed that the clerk's office of the juvenile and domestic relations court was compelled by the May 3rd order to reject K.M.'s

21

notice of appeal, because the order stated it was "an interlocutory, nonappealable order." The Commission asserts that when the deputy clerk consulted Judge Taylor about whether the May 3rd order was appealable, Judge Taylor's only response of directing the deputy clerk to the order was tantamount to insuring that the clerk's office would decline to process the notice of appeal. The Commission contends that Judge Taylor violated the Canons by directly thwarting an appeal by ruling that her own decision was not subject to appeal and by advising the deputy clerk that the order was not appealable, when Judge Taylor knew the clerk was faced with the decision whether to accept a notice of appeal from K.M.'s attorney.

Judge Taylor contends that nothing in the record supports the Commission's assertion that she violated any of the subject Canons. Rather, Judge Taylor argues, the record shows that she attempted to apply the law exactly as it is written and the Commission offered no plausible theory to support its assertion that she committed a clear misappropriation of judicial power.

Judge Taylor maintains that a post-adjudication, pre-disposition detention pursuant to Code § 16.1-248.1(G) does not implicate Code § 19.2-124 bail appeal rights because the proceeding is no longer in the pretrial stage. Furthermore,

22

Judge Taylor asserts that Code § 19.2-120 distinguishes "bail" from "detention," and subsection E of that statute directs a judicial officer to "inform the person of his right to appeal from the order denying bail or fixing the terms of bond or recognizance," but does not mention "detention." According to Judge Taylor, "[g]iving due consideration to the words actually used by the General Assembly in the subject statutes, [her] reading of the provisions is correct or, at a minimum, plausible and supportable."

Judge Taylor reiterated that the language in the May 3rd order that it was an "interlocutory, nonappealable" order was included to flag the order for the circuit court to ensure that the appealability issue would be addressed. Judge Taylor contends that this Court's prior opinions addressing complaints brought by the Commission support dismissal of the complaint against her. Judge Taylor asserts that her case is distinguishable from Lewis, as there is no allegation nor evidence that she defied or disrespected an order of any higher court. 264 Va. at 406, 568 S.E.2d at 690. Moreover, according to Judge Taylor, the statutes at issue leave room for a difference of opinion, and she argues that several of her fellow judges on the juvenile and domestic relations court agreed with her analysis. She acknowledged, however, that her legal interpretations could be mistaken. In this manner,

Judge Taylor contends that her case is similar to Peatross, as the record in this matter reveals, at worst, mistakes of law, which alone do not warrant discipline. 269 Va. at 447-48, 611 S.E.2d at 402-03.

As an initial matter, we note that it is difficult to understand Judge Taylor's position that the General Assembly intended to create a "no appeal zone" for juveniles held post-adjudication, pre-disposition. The weakness of Judge Taylor's argument can be demonstrated by one example, which in essence was delineated in K.M.'s May 4, 2007 letter to Judge Taylor. If a juvenile and domestic relations judge has the authority to detain a juvenile in secure detention pending disposition without review by the circuit court, the judge, by extending the date of disposition, can effectively require the juvenile to be detained indefinitely which would make the juvenile's right of appeal to the circuit court for de novo trial meaningless. Such a result is not only inconsistent with Virginia's statutory scheme providing for trial de novo for appeals from district courts to circuit courts, it also flies in the face of our commitment to allowing persons accused of crimes to challenge the denial of bond successively to the next higher court, and the statutory requirement that the judicial officer denying bail inform the defendant of his or her right to appeal.

However, the real issue in this case is not whether Judge Taylor made a legal error in denying K.M. the right to appeal his secured detention and denial of bail. The issue at the heart of this case is whether Judge Taylor thwarted K.M.'s right to have her ruling reviewed and, if she did thwart the appeal of her ruling, whether that is a violation of the Canons.

We conclude the Commission has met its burden of proving by clear and convincing evidence that Judge Taylor committed the violations of the Canons charged in the Notice of the Commission dated January 13, 2009. Although the relevant statutes support a finding that Judge Taylor erred in her interpretation of the law, her actions rose to a level beyond a mistake of law when she affirmatively blocked K.M.'s attempted appeal to the circuit court.

Judge Taylor's ethical violations began when she ruled that her May 3rd order was interlocutory and nonappealable. It is undisputed that when K.M.'s counsel attempted to file a notice of appeal at the clerk's office, Judge Taylor directed the deputy clerk to the "interlocutory, nonappealable" language appearing on the order when the deputy clerk sought guidance on whether to process the notice of appeal.

On May 4, 2007, K.M.'s counsel sought reconsideration of Judge Taylor's ruling by letter stating:

25

I would respectfully ask that you reconsider your ruling as represented by the attached Order entered May 3, 2007 in this case. Please understand that I have the utmost respect for the Court and it is because of that I am asking this Court to reconsider its ruling in light of what I feel to be clear authority that would allow my client an appeal from your denial of his request for a bond pending the sentencing hearing in this matter, and also your denial of our request of the Clerk to appeal your ruling.

K.M.'s counsel cited Code §§ 19.2-120 and 19.2-124 in support of his contention that K.M. was entitled to bail and, if denied by the juvenile and domestic relations court, entitled to an appeal to the circuit court. K.M. asserted, through counsel, that Judge Taylor's rulings, while interlocutory, were appealable both as to the denial of bond and as to Judge Taylor's ruling that "[t]his order is [a] . . . nonappealable order," which denied K.M.'s right to appeal. K.M.'s counsel also stated that he had "previewed" the issue briefly with the circuit court and that the circuit court "certainly felt that [Judge Taylor's] denial of [K.M.'s]

right to appeal on the motion for a bond is an appealable order." Judge Taylor did not respond to the letter.

K.M.'s counsel also wrote a letter dated May 4, 2007 to the clerk of court stating that K.M. wished to appeal the May 3rd order as well as Judge Taylor's determination that the order was not appealable, and requested that the clerk's office "forthwith today prepare appropriate appeal notices." K.M.'s counsel stated that if the clerk's office did not prepare the appeal notices, he would have no alternative but to proceed with a writ of mandamus. The clerk responded by letter dated May 7, 2007 to K.M.'s counsel, stating: "Please be advised that I am compelled to follow the ruling entered on May 3rd, 2007 by Judge Ramona D. Taylor, which states the order is interlocutory and non-appealable." A copy of the clerk's May 7th letter was sent to Judge Taylor. Judge Taylor's only apparent response was to enter her May 8th "corrective order" nunc pro tunc to May 3, 2007, containing the same language ruling, "this order is an interlocutory, nonappealable order."

Judge Taylor's testimony at the Commission hearing further indicates her intention to thwart K.M.'s appeal. Judge Taylor admitted she knew that when the deputy clerk inquired into the order's appealability, the clerk was trying to decide whether to process the appeal. At the hearing,

27

Judge Taylor repeatedly stated her belief that it was not her function as a judge to get involved in the processing of appeals and that her duties ended when she decided the case. Judge Taylor put the onus on the deputy clerk to consult her supervisor and on the clerk's office to consult this Court [OES] to obtain guidance on the appealability of the order irrespective of the language of the order. However, Judge Taylor never provided direction to either the deputy clerk or the clerk of court to contact this Court [OES]. Despite denying responsibility for what occurred after she entered the May 3rd order, Judge Taylor admitted to the Commission that she was the chief judge at the time and in that capacity, she had the authority to direct the clerk what to do.[4]

Judge Taylor does not deny that the clerk's office may have felt compelled to refuse K.M.'s appeal as a result of Judge Taylor's instruction to refer back to the language of the order. Judge Taylor also gave no indication of any attempt on her part to correct what she now claims was the clerk's mistaken belief that she was compelled by Judge Taylor to refuse to process the appeal. Only four days after the

---

[4] Judge Taylor became chief judge of the juvenile and domestic relations court on July 1, 2006. Her term was for two years.

order was entered, Judge Taylor was sent a copy of the letter from the clerk of court, which clearly stated that the clerk was "compelled" to follow Judge Taylor's ruling that the order was nonappealable. Even at oral argument, when Judge Taylor's counsel was asked, "when [Judge Taylor] said to the clerk that the order by express terms is not appealable, wasn't she at least implicitly directing the clerk what to do with the paperwork?," her counsel responded: "I think it's fair to say that one could walk away with that message."

It is clear from the record that Judge Taylor was well aware of K.M.'s counsel's efforts to secure K.M.'s release either through an appeal of the denial of bond or an appeal of Judge Taylor's order that the denial of bond was nonappealable, or by an appeal de novo of K.M.'s case to the circuit court. However, Judge Taylor did not seek to clarify what she now argues was her position that she: (1) did not rule the May 3rd order was not appealable; (2) did not direct the clerk's office to refuse K.M.'s notice of appeal; and (3) believed the clerk's office should contact this Court [OES] for guidance on processing the notice of appeal. In addition, Judge Taylor had knowledge of the writ of mandamus filed against the clerk of court and did no more to address the matter than send an email to fellow judges explaining her ruling and informing them that K.M.'s attorney had filed a

writ of mandamus "to compel the filing of an appeal from [the May 3rd order]," and stated that she "ruled that the order was not appealable." Judge Taylor subsequently sent another email informing her fellow judges that the writ of mandamus had been granted, and thanking the clerk "for holding up so well under the pressure of this litigation and for keeping [Judge Taylor] so well informed."

Judge Taylor's argument that she did not rule that her May 3rd order was not appealable is implausible. Judge Taylor described her action as a "ruling" in her email to her fellow judges. Thus, when the deputy clerk asked whether the order was appealable, Judge Taylor reinforced the effect of her ruling by directing the clerk to the "nonappealable" language that Judge Taylor herself typed on the order. In addition, Judge Taylor's argument that her ruling that the order was interlocutory and nonappealable was merely a "red flag" for the circuit court is equally implausible. Judge Taylor has produced no other examples of ruling an order nonappealable for use as a "red flag" to the circuit court. Finally, what makes her "flagging" argument most implausible is that her actions prevented the order from ever reaching the circuit court where it could purportedly serve as a "red flag." If the interlocutory and nonappealable language was truly intended as a "red flag," Judge Taylor should have promptly

advised the deputy clerk to process the appeal so that the circuit court could rule.

A judge may not prevent the appeal of his or her own decisions. More than a century ago, we recognized the basic principle that a court cannot prevent its own decision from being reviewed on appeal by refusing to certify the facts proved and the evidence in the case. Powell v. Tarry, 77 Va. 250, 264 (1883). Therefore, it is clear that a court cannot expressly rule that its own decision is not subject to appellate review, by ruling the order is interlocutory and nonappealable.

We do not agree with Judge Taylor's argument that she did not thwart K.M.'s appeal because once she made her ruling, the case was out of her hands. It is disingenuous of Judge Taylor to claim that when she responded to the clerk who asked her whether the appeal should be processed, Judge Taylor was not in a supervisory position over that clerk. Her argument that she was acting as the presiding judge and not the chief judge with supervisory authority over the clerk's office was certainly never made clear to the deputy clerk or the clerk of court. What is clear is Judge Taylor knew that when she pointed the deputy clerk to the language of her ruling that the deputy clerk was not going to process the appeal. Judge Taylor also knew in the days following that the clerk of court

31

had refused to process the appeal because the clerk felt compelled by Judge Taylor's order not to process it.

Judge Taylor's argument that she believed the clerk's office should contact this Court [OES] for guidance on processing the appeal is equally disingenuous. Although she now states that processing the appeal is in the nature of a ministerial act under the supervision of the clerk, she never made that statement to the deputy clerk when the deputy clerk asked about processing the appeal. Furthermore, Judge Taylor's position that the clerk should have brought any questions to this Court [OES] was never communicated to the clerk, despite K.M.'s concerted efforts to obtain review by a higher court in order to secure his release from custody. Finally, Judge Taylor's argument that she had nothing more to do with whether the case was appealed after her entry of the May 3rd order is belied by her entry of the corrective order on May 8, 2007 nunc pro tunc to May 3, 2007 amidst the threat of a pending writ of mandamus.

Judge Taylor's actions in thwarting K.M.'s appeal of the denial of bond and even of his appeal of her interlocutory and purportedly nonappealable ruling violated the law. When K.M. and his family were prevented by Judge Taylor's actions from obtaining appellate review of her rulings, public confidence in the integrity and impartiality of the judiciary was

diminished.  Judge Taylor violated Canons 1, 2A, and 3B(2) and these violations constituted conduct prejudicial to the administration of justice.

## B. Due Process

Judge Taylor asserts that the Canons are unconstitutionally vague and without appropriately definite standards as applied to the facts in the complaint against her, and that vague and indefinite laws and regulations offend due process rights.  Judge Taylor argues that "[a] close reading of the subject Judicial Canons reveals that they are a mix of clear standards and vague aspirational statements."  According to Judge Taylor, Canon 1's requirement that a judge "shall personally observe [high standards of conduct] so that the integrity and independence of the judiciary will be preserved" does not describe a meaningful standard of conduct for purposes of a disciplinary case.  Judge Taylor argues that Canon 2's requirement that a judge act "at all times in a manner that promotes public confidence" likewise sets forth no particular standards or guidelines.  Lastly, Judge Taylor contends that Canon 3's requirement to "be faithful to the law" is "far more aspirational than measurable."  Therefore, Judge Taylor maintains that the subject Canons are

33

unconstitutionally vague and insufficiently definite to satisfy due process rights in a disciplinary matter.

The Commission asserts that Judge Taylor cites no authority holding that the Canons violate due process because they are impermissibly vague. According to the Commission, courts in other jurisdictions have rejected due process challenges to codes of judicial conduct, and thus it urges this court to likewise reject Judge Taylor's vagueness due process argument.

We hold that the Canons are sufficiently definite and certain to withstand Judge Taylor's due process challenge. "The procedural due process requirements of the Constitution of Virginia compel the Commission, and this Court, to recognize the balance that must be struck between protecting the integrity of the judiciary and the rights of individual judges." Judicial Inquiry & Review Comm'n v. Elliott, 272 Va. 97, 114, 630 S.E.2d 485, 493 (2006).

Courts in other jurisdictions that have considered whether canons of judicial conduct violate "due process" because they are impermissibly vague have rejected such claims. See In re Assad, 185 P.3d 1044, 1052 (Nev. 2008) (Canon 2A not vague); In re McGuire, 685 N.W.2d 748, 762 (N.D. 2004) ("courts in other jurisdictions appear to have routinely rejected vagueness challenges to codes of judicial conduct");

34

*In re Hill*, 8 S.W.3d 578, 582-83 (Mo. 2000) (rejecting "vagueness" challenge to Canons 2A and 2B, holding that "[n]either absolute certainty nor impossible standards of specificity are required," and that "[t]his is especially true in judicial discipline."); *Comm'n on Judicial Performance v. Spencer*, 725 So.2d 171, 176 (Miss. 1998) (rejecting "vagueness" challenge to Canons 1, 2A, 2B, and 3B, holding that "the Canons are sufficient to put [persons] of common intelligence on notice of what type of conduct is prohibited."); *In re Young*, 522 N.E.2d 386, 387-88 (Ind. 1988) (rejecting "vagueness" challenge to Canons 1 and 2, holding that "a greater degree of flexibility and breadth is permitted with respect to judicial disciplinary rules and statutes than is allowed in criminal statutes.").

"The test for determining whether the Canons are vague is whether they convey to a judge a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice." *In re Hill*, 8 S.W.3d at 582. As relevant to the issues in this case, all three Canons which the Commission alleges Judge Taylor violated require a judge to comply with the law so that there will be public confidence in the integrity and impartiality of the judiciary.

The Canons for the Commonwealth of Virginia contain a Preamble, which provides in relevant part that

[t]he Canons of Judicial Conduct are intended to establish standards for ethical conduct of judges. They consist of broad statements called Canons, specific rules set forth in Sections under each Canon and Commentary. The text of the Canons and the Sections is authoritative. Each Commentary, by explanation and example, is advisory and provides guidance with respect to the purpose and meaning of the Canons and Sections. The Commentary is not intended as a statement of additional rules.

Va. Sup. Ct. R., Part 6, § III, Preamble.

The Commentary to Canon 1 includes the following language: "Although judges should be independent, they must comply with the law . . . . [V]iolation of this Canon diminishes public confidence in the judiciary and thereby does injury to the system of government under law." Canon 2A requires a judge to comply with the law in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Canon 3B(2) requires a judge to be faithful to the law.

The Commission has alleged that Judge Taylor's thwarting of K.M.'s appeal was a violation of law which diminished public confidence in the judiciary, an allegation that we have concluded has been established by clear and convincing evidence. The relevant Canons clearly prohibit a judge's failure to follow the law in such a manner as to fail to promote public confidence in the integrity and impartiality of the judiciary. There can be no "vagueness" in the application of the relevant Canons to the conduct in question.

C. The Commission's Consideration of "Prior Contacts"

Judge Taylor cites Code § 17.1-913 to support her argument that it was improper for the Commission to admit and consider evidence of Judge Taylor's prior contacts with the Commission. Specifically, she notes that the statute provides that all prior contacts "not filed with the Supreme Court in connection with a formal complaint filed with that tribunal, shall be kept in the confidential files of the Commission." Code § 17.1-913(A).

Judge Taylor contends that Rule 16 of the Rules of the Judicial Inquiry and Review Commission applies and requires that the records of a proceeding concluded "without an adverse finding by the Commission against a judge . . . be maintained in the Commission's confidential files." 15 VAC § 10-10-10.

37

Judge Taylor asserts that neither Code § 17.1-913 nor Commission Rule 16 allow for the removal of the confidentiality of records of complaints that were not deemed "well founded," and the 2002 and 2006 prior contacts were not determined to be well founded.

Additionally, Judge Taylor argues that unlike Shull, in which Judge Shull's demeanor was discussed in a prior informal proceeding and that proceeding was later considered by this Court for purposes of disposition, the "prior contacts" Judge Taylor had with the Commission were not "directly relevant" to the issues now before the Court. Rather, Judge Taylor states they are irrelevant and more prejudicial than probative of any issue in dispute. The prior contacts, Judge Taylor contends, are irrelevant because the 2002 contact related to an in camera interview and the 2006 contact related to a complaint about starting court late, and both were resolved in her favor. Judge Taylor asks this Court to disregard the prior contacts evidence when determining whether she committed any violation during the 2007 events at issue.

The Commission relies on Shull to support its argument that consideration of Judge Taylor's prior contacts with the Commission was appropriate. 274 Va. at 676-77, 651 S.E.2d at 659. According to the Commission, this Court expressly referred to and relied upon evidence of prior contacts in its

38

decision to remove Judge Shull from office.  The Commission maintains that with regards to the issue of disposition, this Court should be presented with evidence regarding a judge's past contacts with the Commission.  The Commission cites Rule 13(B) of the Rules of the Judicial Inquiry and Review Commission, which provides that any "material [and] relevant" evidence may be admitted.  15 VAC § 10-10-10.

Additionally, the Commission contends that evidence surrounding Judge Taylor's 2002 informal contact with the Commission was relevant to show whether she was amenable to discipline by the Commission or whether the matter needed to be referred to this Court.  The Commission maintains that Code § 17.1-913, regarding confidentiality of the record sent by the Commission to this Court in support of a complaint, and Commission Rule 16, regarding preservation of files at the Commission, are not relevant to the admissibility of evidence of prior contacts at the evidentiary hearing.

We hold that the evidence regarding Judge Taylor's prior contacts with the Commission was properly admitted by the Commission and is now properly before us for review.  At the outset of the Commission hearing, counsel for the Commission stated that "the exhibits are all in the red binder there on the witness desk. . . . But the sides are in agreement that there's no objection to the admission of any of the exhibits."

39

Counsel for Judge Taylor acknowledged the agreement as to the exhibits contained in the binder. The binder, which is part of the record before this Court, contains the Commission's exhibits described as "[c]orrespondence related to judge's 2001-02 informal contact with JIRC," "[r]edacted annotated agenda from JIRC meeting 4-19-02," "[t]ranscript of judge's informal meeting with JIRC dated 5-21-02," and "[c]orrespondence related to judge's 2006 informal contact with JIRC." Judge Taylor's agreement to the Commission's admission of the exhibits is fatal to her argument that the Commission erred in admitting those same exhibits. Rule 5:25.

### D. Recusal of Commission Chairman

Judge Taylor argues that the Commission's chairman, Judge Willis of the Chesapeake Juvenile and Domestic Relations District Court, should have recused himself due to his status as complainant in a prior contact with the Commission. According to Judge Taylor, Canon 3E requires disqualification of the judge from any proceeding in which his or her "impartiality might reasonably be questioned," including instances in which the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding," is a "party to the proceeding," or is likely "to be a material witness." Judge Taylor contends that the proceedings before

40

the Commission were tainted by Judge Willis' involvement and therefore seeks dismissal of the complaint.

The Commission maintains that it can be reasonably inferred that Judge Taylor was aware of Judge Willis' involvement in a prior informal contact since 2006 and therefore knew of the purported grounds for Judge Willis' recusal at the outset of the Commission's evidentiary hearing in 2009, but failed to timely object to his participation. Judge Willis' role in Judge Taylor's 2006 prior contact with the Commission is reflected by an email dated January 26, 2006 from Judge Willis to Judge Deborah M. Paxson, who at the time was the chief judge of the Virginia Beach Juvenile and Domestic Relations District Court, regarding an issue of delays in that court which adversely affected proceedings in the Chesapeake Juvenile and Domestic Relations District Court. The email did not name any judge responsible for the delays and expressly stated: "I do not want any information about who the judge was . . ." However, Judge Willis requested in his email that Judge Paxson notify the judges of the juvenile and domestic relations court of its contents. The Commission argues that it may be inferred that Judge Paxson did notify the judges, including Judge Taylor, of Judge Willis' complaint in 2006.

41

We agree with the Commission's waiver argument, and hold that Judge Taylor did not timely object to Judge Willis' participation in the present proceedings. "A motion for disqualification [of a judge] must be made when the movant learns the grounds upon which the motion is based; thereafter, the motion comes too late." Mason v. Commonwealth, 219 Va. 1091, 1098, 254 S.E.2d 116, 120 (1979). We therefore will not consider this issue. Rule 5:25.

## IV. CONCLUSION

In considering the record before us, we note letters from attorneys who have appeared before Judge Taylor. These letters offer testaments to Judge Taylor's professionalism as an attorney and as a judge of the juvenile and domestic relations court. We have reviewed those submissions as part of our consideration of the proper disposition of this case.

Addressing the issue of disposition, Judge Taylor asks us to compare the facts in four published opinions by this Court addressing complaints brought by the Commission, and conclude that the record in this case supports a dismissal of this Complaint. In addition, Judge Taylor argues that her "prior contacts" with the Commission should not be construed as a lack of amenability to informal discipline on her part, but rather, a lack of courtesy on the part of the Commission.

42

The Commission also directs us to a comparison of prior disciplinary complaints brought by the Commission and specifically, to the case of Judicial Inquiry & Review Commission v. Lewis. In addition, the Commission asks us to consider Judge Taylor's prior experience with the Commission as an indication of her lack of amenability to informal discipline.

We agree with the Commission that this case is very comparable to Lewis, in which we censured a district court judge. Id. at 407, 568 S.E.2d at 690. As in Lewis, Judge Taylor violated the Canons by improper conduct in a single case. Id. at 405-07, 568 S.E.2d at 689-90. In both cases, the judges involved violated Canons 1, 2A, and 3B(2). In Lewis, the judge enforced a contempt order that he knew had been stayed by the circuit court. Id. at 403-04, 568 S.E.2d at 688. Here, Judge Taylor thwarted any review of her secure detention order by the circuit court through appeal of her denial of bond and appeal of her order denying appeal.

In Lewis, the direct harm caused by the judge's ethical violation was a father's incarceration for several hours in disregard of a circuit court's stay order. Id. at 404, 568 S.E.2d at 688. In this case, Judge Taylor's ethical violation blocked appellate review of her rulings and forced K.M. to remain in secure detention for nine days before his writ of

43

mandamus was reviewed by the circuit court and he was released to the custody of his parents.

Judge Lewis was censured with no evidence of prior disciplinary contacts with the Commission. In this case, we do not believe it is necessary to consider Judge Taylor's disputed prior disciplinary record to conclude that censure as sought by the Commission is the appropriate remedy.

In Lewis, we stated that "[p]ublic confidence in the judiciary and the administration of our legal system depends upon faithful adherence to the law . . . . Courts cannot reasonably expect citizens to comply with their orders if the courts themselves do not yield to the orders of higher courts." Id. at 406, 568 S.E.2d at 690. Although Judge Taylor was not faced with an order from the circuit court reviewing her decision and compelling K.M.'s release, she did impermissibly shield her ruling from any review. Judge Taylor's actions, which prevented K.M.'s attorney from seeking his release from secured detention by means authorized by law, impair public confidence in the judiciary and the administration of our legal system. Unless citizens can trust that judges will follow the law, our courts will lose the public's respect and confidence upon which our legal system depends.

Accordingly, we order that Judge Taylor be, and hereby is, censured for engaging in "conduct prejudicial to the proper administration of justice." Va. Const. art. VI, § 10; Code § 17.1-906.

Censure ordered.

JUSTICE KOONTZ, with whom JUSTICE GOODWYN joins, dissenting.

I respectfully dissent. In my view, upon a de novo review, the evidence in this case falls short of clear and convincing evidence that Judge Ramona D. Taylor, a judge of the City of Virginia Beach Juvenile and Domestic Relations District Court, violated the Canons of Judicial Conduct. I therefore do not agree that censure of Judge Taylor by this Court is warranted under Article VI, Section 10 of the Constitution of Virginia.

Many of the historical and procedural facts which ultimately led to the charges against Judge Taylor by the Judicial Inquiry and Review Commission ("the Commission") are not in dispute. On May 2, 2007, Judge Taylor conducted an adjudicatory hearing on a misdemeanor assault charge against a fifteen year old juvenile ("K.M."). K.M. was represented by counsel at that hearing. Upon K.M.'s plea of "no contest" and the evidence presented, Judge Taylor found K.M. guilty of that charge. K.M. had previously been before Judge Taylor on

February 5, 2007 regarding a child in need of services petition ("CHINS petition") filed by his parents. With regard to the CHINS petition, Judge Taylor had ordered, among other things, that K.M. be on good behavior and to refrain from illegal substance abuse. At the conclusion of the adjudicatory hearing on the assault charge, Judge Taylor, as authorized by Code § 16.1-273, ordered that a "social history," which she described as a "full background investigation," be prepared and set the matter for final disposition on May 24, 2007.

Finding that K.M. posed "a substantial risk of harm to the community based upon the egregious nature of the assault," Judge Taylor remanded him to secure custody pending the dispositional hearing scheduled for May 24, 2007. K.M.'s counsel requested Judge Taylor either to enter a final disposition or to release K.M. on bond pending the hearing scheduled for May 24, 2007. In an order entered on May 3, 2007, and subsequently amended nunc pro tunc on May 8, 2007, Judge Taylor denied K.M.'s request for bond pending the May 24, 2007 hearing. In Judge Taylor's order, she stated her reasons for denying the request for bond in the following way:

> Section 19.2-120 of the Virginia Code addresses the factors a judge should consider in determining the bond of a person "held in custody pending trial or hearing." The defendant in this case is being held post-trial and pre-disposition pursuant to § 16.1-

248.1(G) of the Virginia Code. The right to appeal a pre-trial bond determination provided in section 19.2-120(E) of the Virginia Code does not apply to a juvenile held post-adjudication/pre-disposition.

The order further states that "[t]his order is an interlocutory, nonappealable order."

Given the fact that K.M. had assaulted a younger boy to the extent that the victim required medical attention and the fact that Judge Taylor was aware K.M. had not responded favorably to the conditions previously imposed upon him as a result of the CHINS petition, the Commission concedes that Judge Taylor acted within her authority in finding K.M. guilty of the assault charge and in finding that he posed a risk of harm to the community. Additionally, the Commission does not contest that Judge Taylor was authorized by statute to deny K.M.'s request for the immediate disposition of the assault charge without having the benefit of a social history to guide that disposition. Moreover, the Commission also concedes that Judge Taylor did not act improperly in denying K.M. a bond. Rather, the Commission's claim of misconduct is based on the allegation that Judge Taylor intentionally "thwarted" K.M.'s attempt to appeal the order denying his request for bond to the circuit court.

As to that allegation, the undisputed material facts and the reasonable inferences that may be drawn from those facts

47

do not establish, in my view, that Judge Taylor intentionally thwarted K.M.'s attempt to appeal the order denying his request for bond pending the scheduled dispositional hearing on May 24, 2007.  It is undisputed that a number of Judge Taylor's colleagues on the City of Virginia Beach Juvenile and Domestic Relations District Court shared her view that an order such as the order at issue in K.M.'s case was interlocutory and nonappealable.  Code § 16.1-248.1(G) provides, in pertinent part, that:  "The court is authorized to detain a juvenile . . . at any time after a delinquency petition has been filed, both prior to adjudication and after adjudication pending final disposition subject to the time limitations set forth in [Code] § 16.1-277.1."  (Emphasis added.)  The latter Code section establishes a time limitation of thirty days for the completion of the dispositional hearing in a case involving a juvenile held in secure detention.  However, with reference to the issue of bond, Code § 19.2-119 defines, for purposes of Code § 19.2-120, a "Person" to mean "any accused, or any juvenile taken into custody pursuant to § 16.1-246."  The provisions for bail contained in Code § 19.2-120(A) reference "[a] person who is held in custody pending trial or hearing for an offense."

These statutory provisions were the basis upon which Judge Taylor and her colleagues concluded that a juvenile held

48

in secure detention following an adjudicatory hearing and prior to a final dispositional hearing was not entitled to rely upon the appeal provisions of Code § 19.2-120. In a prior opinion, however, this Court has made it clear that mistakes of law alone do not warrant discipline. Judicial Inquiry & Review Comm'n v. Peatross, 269 Va. 428, 447-48, 611 S.E.2d 392, 402-03 (2005). These statutory provisions are not so readily apparent in their application to the circumstances of K.M.'s case as to be totally inconsistent with Judge Taylor's assertion that she "sincerely believed" that her order denying bail was interlocutory and nonappealable.

As suggested by the majority, the issue at the heart of this case is whether Judge Taylor's actions rose to a level beyond a mistake of law. The focus of that issue rests principally upon Judge Taylor's response to the deputy clerk's inquiry regarding whether K.M.'s notice of appeal of the denial of bond should be accepted and processed. By stipulation, Judge Taylor and the Commission agree that the deputy clerk went to Judge Taylor and advised her that K.M.'s counsel was at the clerk's office to file a notice of appeal. "Judge Taylor confirmed that the order by its express terms was not appealable, but did not state to the deputy clerk that the notice of appeal should not be accepted." The deputy clerk did not accept the notice of appeal. As a result,

49

counsel for K.M. successfully obtained a writ of mandamus from the circuit court and K.M. was released on bond from detention.

Beyond question, the deputy clerk's refusal to accept and process K.M.'s appeal resulted from Judge Taylor's response to the deputy clerk's inquiry. In my view, it is equally clear that Judge Taylor's response was based upon a sincere belief that her order concerning bail was interlocutory and nonappealable. Several undisputed facts readily support that conclusion. At the time of her ruling, Judge Taylor orally explained to K.M.'s counsel her rationale for believing that her bond ruling was interlocutory and nonappealable and she wrote that rationale in her order.

The majority reasons that the issue is "whether Judge Taylor thwarted K.M.'s right to have her ruling reviewed and, if she did thwart the appeal of her ruling, whether that is a violation of the Canons." Unlike the majority, I am of opinion that the Commission has not shown by clear and convincing evidence that Judge Taylor's actions were knowingly improper, and that this difference in the interpretation of the evidence presented is especially relevant to the determination of whether she "has engaged in conduct prejudicial to the proper administration of justice" as contemplated by Article VI, Section 10 of the Constitution of

50

Virginia. In this case, the Commission argues that, if this Court determines Judge Taylor's action were "mere legal error," she "arrogated to herself the power to rule that her own decision was immune from appellate review." This argument is unpersuasive because the evidence establishes that, while legally in error, Judge Taylor was merely following the law as she and her colleagues understood it to be.

In Peatross, this Court declined to censure a jurist for legal errors. 269 Va. at 449-50, 611 S.E.2d at 403-04. This Court stated that certain errors and omissions committed by Judge Peatross were errors of law, "not violations of the Canons." Id. at 447, 611 S.E.2d at 402. This Court cited with approval cases from Illinois and California that stated that mere legal error should not be the subject of discipline. Id.; see Oberholzer v. Comm'n on Judicial Performance, 975 P.2d 663, 680 (Cal. 1999); Harrod v. Illinois Courts Comm'n, 372 N.E.2d 53, 65 (Ill. 1977); see also In re Inquiry Concerning a Judge, No. 207 (Tucker), 501 S.E.2d 67, 71 (N.C. 1998). We stated that not punishing a judge for legal errors is important in order to maintain the independence of the judiciary. See Peatross, 269 Va. at 447, 611 S.E.2d at 402 (citing Harrod, 372 N.E.2d at 65) (stating that in order to maintain an independent judiciary, errors of law should not be the subject of discipline)).

In my view Peatross is controlling in this case because there is insufficient evidence to establish that the legal error committed by Judge Taylor was accompanied by bias, abuse of authority, or intentional disregard of the law. It is noteworthy in that regard that the orders and actions of Judge Taylor occurred in May 2007, and the present proceedings were conducted before the Commission in March 2009. To the extent that the majority finds degrees of conflict in Judge Taylor's testimony as expressed in its opinion, such is readily understandable with the lapse of time involved. Moreover, these conflicts do not establish a violation of the Canons under the clear and convincing standard required to establish such a violation.

Judge Taylor's actions do not rise to the level of judicial misconduct, particularly in light of this Court's precedents. Unlike the circumstances in Judicial Inquiry & Review Comm'n v. Lewis, 264 Va. 401, 406, 568 S.E.2d 687, 690 (2002), Judge Taylor did not defy a superior court's order. Unlike the circumstances in Judicial Inquiry & Review Comm'n v. Shull, 274 Va. 657, 676-77, 651 S.E.2d 648, 659-60 (2007), Judge Taylor did not demean litigants and bring discredit to the judiciary. In the absence of clear and convincing evidence that Judge Taylor acted intentionally to thwart the appeal, rather than merely erred in failing to direct the

deputy clerk to perform the ministerial duty of accepting and processing the notice of appeal of her order, I cannot agree with the majority that her actions violated the Canons of Judicial Conduct.

The censure of a judge for misconduct has obvious and drastic consequences for the judge both professionally and personally. Judges make errors of law, but such errors do not constitute misconduct unless, for example, the judge purposefully deprives a litigant of rights that the judge knows a litigant is entitled to by law. Without such a high standard, the independence of the judiciary will be constantly in question.

For these reasons, I would dismiss the complaint filed in this case by the Commission against Judge Taylor.