Russell D. ALRED, Circuit Judge
of the 26th Judicial Circuit,
Movant

v.

COMMONWEALTH of Kentucky,
JUDICIAL CONDUCT COM-
MISSION, Respondent.

No. 2011–SC–000558–RR.

Supreme Court of Kentucky.

July 23, 2012.

As Modified on Denial of Rehearing
Oct. 25, 2012.

Marcus S. Carey, Erlanger, KY, Counsel for Appellant.

Jeffrey C. Mando, Louis D. Kelly, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY, George F. Rabe, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

Russell D. Alred, Judge of the 26th Judicial Circuit of Kentucky, became the focus of a lengthy investigation by the Judicial Conduct Commission, culminating in formal charges consisting of twenty allegations of misconduct in office. Following an adversarial hearing on these charges, the commission found official misconduct on nine of the charges and ordered Judge Alred removed from office.

On review by this Court, Judge Alred urges us to overturn the commission's order. He contends:

1) He was denied fundamental due process because "misconduct in office" is an unconstitutionally vague standard, and the provisions of Kentucky's Code of Judicial Conduct relied upon by the commission lack specificity, rendering those provisions unconstitutional facially and as applied;

2) He was denied his rights under the Sixth Amendment of the United States Constitution;

3) His rights under Supreme Court Rules (SCR) 4.170 were violated; and

4) The commission's findings are the clearly erroneous result of the misapplication of law, and the order is not supported by the evidence and is gen-

erally indicative of the commission's lack of impartiality.

After reviewing the lengthy record, we affirm the order of the commission as to eight counts of official misconduct and the commission's decision to remove Judge Alred from office. We reverse the commission's findings and legal conclusions as clearly erroneous as to Count V.

## I. PROCEDURAL HISTORY.

After receiving an initial complaint, the commission authorized an investigation of Judge Alred's activities. The commission notified Judge Alred of the investigation, and he appeared at several informal conferences with the commission at which he either represented himself or had counsel assist him. At these informal conferences, Judge Alred received factual information gathered in the investigation, and the commission gave him an opportunity to present other information bearing on the investigation.

At the conclusion of the investigation, the commission issued formal charges against Judge Alred, consisting of twenty counts of violating the Kentucky Code of Judicial Conduct. Ultimately, the commission dismissed eleven of those counts.[1]

Following issuance of the charges, the commission conducted a formal hearing. Judge Alred attended the hearing and, acting as his own counsel, presented his defense.[2]

---

**1.** A combination of motions to dismiss filed by the JCC's counsel and Judge Alred and findings of insufficient evidence at the formal hearing resulted in the dismissal of these eleven charges. Counsel for the commission filed a motion to dismiss Counts XI, XVIII, and XIX before the formal hearing. The commission also granted Judge Alred's motions to dismiss Counts IV, XX, XIV, and XV for failure of the commission to comply with SCR

4.170(4). The commission dismissed Counts I, VIII, X, and XVI because they were not proven by clear and convincing evidence at the formal hearing.

**2.** Judge Alred was able to cross-examine adverse witnesses, present his own evidence, call witnesses on his own behalf, and make an opening statement and closing argument.

One month later, the commission issued its ruling. The commission found by clear and convincing evidence that Judge Alred committed nine violations of the Code of Judicial Conduct. The order from the commission also expressed concern over Judge Alred's lack of candor in his testimony before the commission. Specifically, the commission stated that "even when confronted with videotapes of his actions and orders which were clear on their face, [Judge Alred] continued to assert positions which were, at best, disingenuous and, at worst, blatant misrepresentations." And, ultimately, the commission concluded that Judge Alred's actions "show[ed] a blatant and persistent failure to uphold the impartiality and integrity of the judiciary."

In its Findings of Fact, Conclusions of Law, and Final Order, the commission voted unanimously to remove Judge Alred from office in accordance with its authority under Section 121 of the Kentucky Constitution[3] and SCR 4.020.[4] It is from Judge Alred's timely appeal of the commission's order that we review this matter.

3. Stating, in pertinent part, that "[s]ubject to rules of procedure to be established by the Supreme Court, and after notice and hearing, any [judge] may be ... removed for good cause by a commission composed of one judge of the Court of Appeals, selected by that court, one circuit judge and one district judge selected by a majority vote of the circuit judges and district judges, respectively, one member of the bar appointed by its governing body, and two persons, not members of the bench or bar, appointed by the Governor. The commission shall be a state body whose members shall hold office for four-year terms. Its actions shall be subject to judicial review by the Supreme Court."

4. Stating, in pertinent part, that "[the] Commission shall have authority ... to impose the [sanction of removal] upon any judge of the Court of Justice ... who after notice and hearing the Commission finds guilty of ... [m]isconduct in office [or] [v]iolation of [t]he Code of Judicial Conduct, Rule 4.300."

## II. ANALYSIS.

### A. Judge Alred was not Denied Due Process. SCR 4.020 and 4.300 (Judicial Canons 1 and 2A) are not Unconstitutional Facially or as Applied.

 Although this Court has addressed some due process and constitutional issues with respect to the commission's removal authority and our judicial canons, we have not done so with respect to the particular rules and canons that Judge Alred calls into question. Judge Alred contends that his removal for "misconduct in office,"[5] which he was found to have committed on nine counts, is impermissible because "misconduct in office" is an unconstitutionally vague standard. And he claims Canon 1[6] and Canon 2A[7] lack the necessary specificity to define an objective standard, thereby allowing the commission too much discretion to determine when a violation occurs.

Although Kentucky has not discussed whether these particular rules violate the Constitution and due process, published

5. SCR 4.020(1)(b)(i).

6. "A judge shall uphold the integrity and independence of the judiciary. An independent and honorable judiciary is indispensable to justice in our society. A judge should actively participate in establishing, maintaining[,] and enforcing high standards of conduct[] and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective." SCR 4.300.

7. "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." SCR 4.300.

opinions in other states have addressed similar issues. Other state courts have found that "[t]he test for determining whether the [judicial conduct standards] are vague is whether they convey to a judge a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice." [8] "The constitutionality of necessarily broad standards of professional conduct has long been recognized." [9] And it is generally understood that "a greater degree of flexibility and breadth is permitted with respect to judicial disciplinary rules and statutes than is allowed in criminal statutes," because they are meant to achieve different goals—maintenance of judicial standards as opposed to punishment for criminal conduct. [10]

In support of his position, Judge Alred cites some limited case law on vagueness with respect to the law; but his leading authority discusses a city ordinance. [11] Judge Alred correctly asserts that *Grayned v. City of Rockford* stands for the proposition that a law must be written so that a person of ordinary intelligence would have a reasonable opportunity to know what act is prohibited. [12] But our Code of Judicial Conduct is not a general criminal or civil statute designed to guide the average citizen. Our Code of Judicial Conduct is an established set of professional standards that are in place to ensure the fitness of the judiciary. With this important distinction in mind, we turn to SCR 4.020 and Canons 1 and 2A of the Kentucky Code of Judicial Conduct.

### 1. SCR 4.020(1)(b)(i).

The authority to impose discipline upon judges for misconduct in office arises from Section 121 of the Kentucky Constitution, which says that a judge may be suspended without pay or removed from office "for good cause." This constitutional provision is codified in SCR 4, including SCR 4.020(1)(b)(i), which allows the commission to impose sanctions against a judge who engages in *misconduct.* The Kentucky Code of Judicial Conduct defines *misconduct* through its canons and commentary.

In 1978, this Court concluded that the words "for good cause" found in Kentucky's Constitution supply sufficiently definite notice to inform a judge of the type of conduct for which the judge could be disciplined. [13] In *Nicholson v. Judicial Retirement and Removal Comm'n,* Judge S. Rush Nicholson challenged his censure on the grounds that the standard "for good cause" was too vague to identify what type of behavior might subject him to censure. [14] The *Nicholson* court stated,

> Such phrases as … 'for good cause' are terms of art which possess a special meaning manifest to the [legal] profession when used in this context. These terms denote a legal cause which affects

---

**8.** *In re Hill,* 8 S.W.3d 578, 582 (Mo.2000) (citation omitted). *See also Judicial Inquiry and Review Comm'n v. Taylor,* 278 Va. 699, 685 S.E.2d 51, 64 (2009); *In re McGuire,* 685 N.W.2d 748, 762 (N.D.2004); *Miss. Comm'n on Judicial Performance v. Spencer,* 725 So.2d 171, 175–76 (Miss.1998).

**9.** *In re Gillard,* 271 N.W.2d 785 n. 7 (Minn. 1978).

**10.** *In re Young,* 522 N.E.2d 386, 388 (Ind. 1988) (citations omitted). *See also In re Seraphim,* 97 Wis.2d 485, 294 N.W.2d 485, 490–

91 (1980); *In re Storie,* 574 S.W.2d 369, 373 (Mo.1978); *Gillard,* 271 N.W.2d at 812.

**11.** *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

**12.** *Id.* at 108–09, 92 S.Ct. 2294.

**13.** *Nicholson v. Judicial Retirement and Removal Comm'n,* 562 S.W.2d 306, 308–09 (Ky. 1978).

**14.** *Id.*

the ability and fitness of a judge to perform the duties of the office.[15]

The same is true of the term *misconduct* found in SCR 4.020(1)(b)(i).

In addition, "ample guidelines for the determination of proper conduct may be found in the ethical standards applicable to lawyers and judges adopted by national and state bar associations and in the moral standards expected of judicial officers by the public." [16]

A judge can readily discern what constitutes *misconduct* within the meaning of SCR 4.020(1)(b)(i) by referring to the Kentucky Code of Judicial Conduct, which contains broad canons, specific rules, and commentary. Guidance is also available from the Judicial Ethics Committee, which publishes advisory opinions regarding "the propriety of any act or conduct and the construction or application of any canon . . . upon request from any justice, judge, trial commissioner[,] or by any judicial candidate." [17] So we find that the term *misconduct* found in SCR 4.020(1)(b)(i) is not unconstitutionally vague.

### 2. *Canons 1 and 2A.*

 Judge Alred contends that Canons 1 and 2A contain language that provides no reasonable opportunity for a person of any level of intelligence to know what conduct is prohibited. We disagree.

Canon 1 says,

A judge shall uphold the integrity and independence of the judiciary. An independent and honorable judiciary is indispensable to justice in our society. A judge should actively participate in es-

tablishing, maintaining[,] and enforcing high standards of conduct[ ] and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.[18]

Canon 2 states, "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." [19] And the rules set forth in Sections A through E under Canon 2 offer further guidance on what is required of judges.

Because the Kentucky Code of Judicial Conduct is modeled closely after the American Bar Association's Model Code of Judicial Conduct, it is strikingly similar, if not identical, to the judicial codes of conduct adopted by other states that have also adopted codes similar to the Model Code. For example, Canons 1 and 2A of Virginia's, Mississippi's, and North Dakota's codes of judicial conduct are identical to the same canons in Kentucky's Code of Judicial Conduct. These states' supreme courts have concluded that the canons furnish a sufficient amount of detail to apprise judges of what is required of them in terms of abiding by the law and promoting the public confidence in the integrity and impartiality of the judicial system.[20]

In *Judicial Inquiry and Review Comm'n v. Taylor*, the Virginia Supreme Court addressed Canons 1 and 2A when a judge challenged her sanctions by claiming

---

**15.** *Id.* at 308 (citations omitted).

**16.** *Id.* at 308–09.

**17.** SCR 4.310(2).

**18.** SCR 4.300.

**19.** *Id.*

**20.** *See Taylor,* 685 S.E.2d 51; *Spencer,* 725 So.2d 171; *McGuire,* 685 N.W.2d 748.

the canons were invalid because they failed to describe meaningful standards of conduct. The Virginia Supreme Court stated:

> The Commentary to Canon 1 includes the following language: "Although judges should be independent, they must comply with the law.... Violation of this Canon diminishes public confidence in the judiciary and thereby does injury to the system of government under the law." Canon 2A requires a judge to comply with the law in a manner that promotes public confidence in the integrity and impartiality of the judiciary....
>
> The relevant Canons clearly prohibit a judge's failure to follow the law in such a manner as to fail to promote public confidence in the integrity and impartiality of the judiciary. There can be no "vagueness" in the application of the relevant Canons to the conduct in question.[21]

The Virginia Supreme Court concluded that these items, when read together, clearly defined what judges were required to do to promote public confidence in the integrity and impartiality of the justice system. The Mississippi Supreme Court also determined that identical canons were sufficient to put people of common intelligence on notice of what type of conduct is prohibited.[22] And North Dakota's Supreme Court found, for similar reasons, that the canons were not unconstitutionally vague.[23]

Kentucky's Code of Judicial Conduct contains a set of canons, which are broad statements, specific rules set forth in sections beneath each canon, and commentary. The broad canons and more specific sections are authoritative. And the commentary supplies guidance regarding the meaning and purpose of the canons and sections.[24] Given the guidance of the commentary, along with the clear mandate of the canons and sections, we believe Judge Alred was well aware that he was required to follow the law and that if he chose not to do so, he might be disciplined for engaging in behavior that was detrimental to the public's perception of the integrity and impartiality of the bench. We hold that Canons 1 and 2A are not unconstitutionally vague or overbroad.

## B. Judge Alred was not Denied his Rights Under the Sixth Amendment.

Judge Alred makes several arguments that the commission's investigation and hearings abridged his rights under the Sixth Amendment to the U.S. Constitution. We are unpersuaded by his argument on any of the Sixth Amendment issues.

---

21. *Taylor*, 685 S.E.2d at 64 (internal brackets omitted).

22. *Spencer*, 725 So.2d at 176.

23. *McGuire*, 685 N.W.2d at 762.

24. For instance, the commentary to Canon 1 provides,

> Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depends in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law. This Code is intended to apply to every aspect of judicial behavior except purely legal decisions made in good faith in the performance of judicial duties. Such decisions are subject to judicial review. Reference is made to SCR 4.020(2).

### 1. In the Course of These Proceedings, Judge Alred was not Entitled to the Protections of the Sixth Amendment.

■ The Sixth Amendment applies in the context of criminal prosecutions.[25] This Court held in *Nicholson* that judicial disciplinary proceedings are different from criminal proceedings.[26] The *Nicholson* court considered whether the ex post facto prohibition in the U.S. and Kentucky Constitutions applied to judicial disciplinary matters.[27] The court concluded:

> It is clear that the "ex post facto" prohibition applies only to criminal matters. **A proceeding before the Commission is not a criminal matter.**
>
> The purpose of Section 121 of our constitution is the regulation of the conduct of those persons charged with the administration of justice. The aim of proceedings instituted pursuant to this section is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office[,] and correcting any deficiencies found by taking the least severe action necessary to remedy the situation. The target is not punishment of the judge. Consequently, the action of the Commission does not constitute a violation of the "ex post facto" prohibitions of the federal and state constitutions.[28]

Because the Sixth Amendment only applies in criminal proceedings and a judicial disciplinary proceeding is not a criminal proceeding, Judge Alred does not have any specific Sixth Amendment rights in connection with his disciplinary proceeding.

### 2. Judge Alred's Rights are not Violated by the Commission's Dual Investigative and Adjudicatory Functions.

■ Judge Alred takes issue with the commission's twofold investigative and adjudicatory roles. He contends his due process rights were violated because the commission performing these two roles produced a biased tribunal. Judge Alred refers us to *Caperton v. A.T. Massey Coal Co., Inc.*,[29] a United States Supreme Court case, to define when actual interest or bias might be shown or inferred so as to interfere with an individual's due process rights. But *Caperton* is inapplicable to the matter before us. It addresses the potential bias of a judge sitting in the traditional role on the bench, without investigative powers, in the context of a traditional civil case for fraudulent misrepresentation, concealment, and tortious interference with existing contractual relations. In *Caperton*, a party allegedly made campaign contributions to the judge's campaign.[30]

More analogous to Judge Alred's assertions is a case that the United States Supreme Court considered several years ago in the context of a doctor's objecting to the procedures used to suspend his medical license.[31] In *Withrow v. Larkin*, the Court ruled that the "combination of inves-

---

25. U.S. Const. Am. VI ("In all criminal prosecutions ...."); *see also Cabinet for Health and Family Services v. A.G.G.*, 190 S.W.3d 338, 345 (Ky.2006) ("[T]he Sixth Amendment does not apply to civil cases.") (citations omitted); *United States v. Zucker*, 161 U.S. 475, 481, 16 S.Ct. 641, 40 L.Ed. 777 (1896).

26. *Nicholson*, 562 S.W.2d at 308

27. *Id.*

28. *Id.* (citations omitted) (emphasis added).

29. 556 U.S. 868, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).

30. *Id.*

31. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).

tigative and adjudicative functions does not, without more, constitute a due process violation." [32]

When the *Withrow* Court spoke to the issue of what "more" would be required to give rise to a constitutional violation, it said that an individual who complained about the combination of investigative and adjudicative functions

> must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that[ ] under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.[33]

And, in our own case, this Court determined in *Nicholson* that Judge Nicholson did not

> overcome the presumption of honesty and integrity of the members of the Commission, most of whom are members of the bench or bar and cognizant of the proper standards applicable at each stage of the proceedings. The case law, both federal and state, generally rejects the idea that the combination of

judging and investigating functions is a denial of due process.[34]

In Judge Alred's case, the commission dismissed Counts I, VIII, X, and XVI because they were not proven by clear and convincing evidence. In accordance with *Nicholson,* this indicates that the commission was aware of the different standards applicable to bringing charges to a formal hearing versus those applicable to the adjudication of those charges.

We are persuaded by the United States Supreme Court's observation in *Withrow* that "experience teaches us that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable" where "the adjudicator has a pecuniary interest in the outcome ... [or] ... has been the target of personal abuse or criticism from the party before him." [35] Judge Alred does not allege or prove that the commission or any of its members would receive a pecuniary benefit as a result of his removal from office. He also fails to demonstrate that the commission or any particular member would be so incensed as a result of any criticism he leveled at them as to be unable to perform their functions in accordance with the law and rules of the forum.[36] Because both federal law and Kentucky law have found that the combination

---

**32.** *Id.* at 58, 95 S.Ct. 1456 (The examining board had the power to initiate disciplinary proceedings by bringing charges; investigate those charges; prosecute the charges; rule on the charges; and, if necessary, impose sanctions.).

**33.** *Id.* at 47, 95 S.Ct. 1456.

**34.** *Nicholson,* 562 S.W.2d at 309 (citations, internal quotations, and parentheses omitted). The Mississippi Supreme Court also upheld a commission decision stating that the defendant-judge "present[ed] no specific foundation for suspecting that the Commission was in any way biased toward the Executive Director of the Commission or his investigation

into [the judge]." *Mississippi Comm'n of Judicial Performance v. Russell,* 691 So.2d 929, 947 (Miss.1997).

**35.** 421 U.S. at 47, 95 S.Ct. 1456.

**36.** The fact that Judge Alred repeatedly asked the chairman and the commission as a whole to recuse is insufficient to make the required showing. Judge Alred claims that the JCC retaliated against him for filing motions to recuse. While counsel for the commission filed a motion to suspend Judge Alred pending resolution of the charges, the commission denied the motion. So the retaliation claim is meritless.

of investigative and adjudicative functions in administrative bodies is not inherently flawed and Judge Alred offers no persuasive evidence to overcome this presumption, we find no violation of his constitutional due process rights.

### C. No Commission Members were Required to Disqualify.

■ On numerous occasions after the commission issued the formal charges, Judge Alred demanded that the chairman of the commission and the commission as a whole recuse themselves. In each instance, the chairman and commission members declined; and those decisions were upheld by vote.[37] Because the chairman and the commission members did not recuse themselves, Judge Alred asserts that his rights were violated.[38] We disagree.

A commission "member or alternate member shall disqualify from participation as a member in all matters in which the member has an interest, Relationship[,] or

bias that would disqualify a judge in a judicial proceeding."[39] Canon 3(E) states, in pertinent part, that a judge shall disqualify in a judicial proceeding "in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer[ ] or personal knowledge of disputed evidentiary facts concerning the proceeding."[40]

■ "The burden of proof required for recusal of a trial judge is an onerous one. There must be a showing of facts of a character calculated seriously to impair the judge's impartiality and sway his judgment."[41] And, "[o]n appeal, this Court must accept the findings and conclusions of the commission unless they are clearly erroneous or unreasonable."[42] We find that Judge Alred is unable to establish any type of relationship, interest, or bias that would prevent the commission or any of its members from hearing the matter.[43] So

37. When a member refuses to recuse, the recusal issue is decided by majority vote of the other members of the commission by written findings. SCR 4.090(2)(c).

38. To the extent that Judge Alred implies that his due process rights were violated because the chairman and the commission as a whole failed to recuse themselves, we note that the right to an impartial judge is an element of due process. *See Johnson v. Mississippi,* 403 U.S. 212, 216, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) (citations omitted). But "most questions concerning a judge's qualifications to hear a case are not constitutional ones[ ] because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar." *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (citations omitted). So we address Judge Alred's recusal issues in the context of Kentucky's statutory requirements

and professional standards, rather than the Due Process Clause.

39. SCR 4.090(1).

40. SCR 4.300; *see also* KRS 26A.015(2)(a) and (e).

41. *Stopher v. Commonwealth,* 57 S.W.3d 787, 794 (Ky.2001) (citations and internal quotations omitted). Because a commission member need only disqualify where circumstances would disqualify a judge in a judicial proceeding, it follows that the same burden of proof applies to disqualification for both a commission member and a judge.

42. *Gormley v. Judicial Conduct Comm'n,* 332 S.W.3d 717, 725 (Ky.2010) (citations and internal quotations omitted).

43. We note that even if the chairman or commission members should have recused themselves, it does not automatically follow that the commission's order removing Judge Alred from office must be vacated. The Court must

the chairman and commission members did not clearly err by declining to recuse themselves from Judge Alred's proceedings.

### 1. The Chairman's Association with the Investigator.

■ Judge Alred believes the chairman should have recused himself because of his relationship with the commission's investigator, Gene Weaver. In his brief to this Court, Judge Alred summarily states that the chairman and Weaver have known each other for thirty years and have been involved in a "personal relationship for the benefit of the other." In his various motions filed with the commission requesting disqualification of the commission's chairman, Judge Alred supported this "good faith belief" with evidence that Weaver was a member of the city council and was Mayor of Fort Wright, Kentucky, for several years while a member of the chairman's family also served on the city council. So he alleged that the chairman could not be fair and unbiased when ruling on motions alleging misconduct by the investigator. On review, Judge Alred now claims that their association creates an appearance of impartiality rather than actual bias.

As discussed above, a judge is required to disqualify from a proceeding in which the judge's impartiality might reasonably

be questioned. The goal of this provision is to avoid even the appearance of partiality so as to promote public confidence in the integrity of the judicial process.[44] "The inquiry under Canon 3E(1) is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances."[45]

In a written response to Judge Alred's motion for disqualification,[46] the chairman acknowledged that he and the investigator are friends. But this alone did not require the chairman to recuse himself from Judge Alred's proceedings.

> Recusal is generally required by Canon 3E(1) in a proceeding in which · the judge's impartiality might reasonably be questioned. . . . Thus, the intensity of a judge's relationships might be viewed on a continuum. On the one side is the judge's complete unfamiliarity with a lawyer, a witness[,] or a litigant, except in a judicial setting. No recusal is required. On the other extreme is a judge's close personal relationship with a lawyer, a party[,] or a witness, such as a family member or a spouse. Recusal is required under Canon 3E(1). At some point between these two extremes, a judge and a participant in a case may have such a close social relationship that a judge should disclose the relationship to attorneys and parties in a case and, if need be, recuse.[47]

---

consider the risk of injustice to Judge Alred, the risk that denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. *See Petzold v. Kessler Homes, Inc.,* 303 S.W.3d 467, 473–74 (Ky.2010) (applying the test to determine whether a judgment should be vacated as a result of a violation of Canon 3E(1) or KRS 26A.015).

**44.** *Petzold,* 303 S.W.3d at 472 *(quoting Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 860–61, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)).

**45.** *Dean v. Bondurant,* 193 S.W.3d 744, 746 (Ky.2006) (citation and internal quotations omitted).

**46.** A challenged member files a written response stating whether the member recuses. The response may include an explanation of the member's decision. SCR 4.090(2)(b).

**47.** Judicial Ethics Opinion 119, 2010 WL 7080288 at *1 (2010) (internal quotations omitted).

There is no evidence that the relationship between the chairman and the investigator constituted a close social relationship that would require the chairman's disqualification from this case.

Moreover, the investigator was not a party or attorney in Judge Alred's proceedings. In a somewhat unorthodox maneuver, Judge Alred called the investigator as a witness to testify at the formal hearing concerning his investigatory techniques. Among other accusations, Judge Alred claimed the investigator engaged in devious investigative practices because he did not interview Judge Alred's witnesses. But the investigator was not a key witness at the formal hearing. An investigator's role in judicial conduct proceedings is to take witness statements and perform information-gathering services for the commission. The commission determined that Judge Alred violated the Code of Judicial Conduct based on the witnesses' testimony and evidence presented at the formal hearing, not based on the investigator's conduct. Judge Alred was free to present witnesses on his own behalf at the formal hearing, even those whom the investigator did not interview.

Accusations alone will not lead to a conclusion that the relationship between the chairman and the investigator was inappropriate in any manner, much less to the degree that would require the chairman to be disqualified from Judge Alred's proceedings.[48] And we find that a reasonable person with knowledge of all the relevant circumstances would not question the chairman's impartiality.

## 2. Contract Attorney.

■ Judge Alred asserts that the chairman and the commission as a whole should have recused themselves because one of the attorneys presenting evidence against Judge Alred in this proceeding also represented the commission in at least two federal court cases. Judge Alred does not assert that the chairman or the commission members displayed any partiality in favor of this contract attorney. He merely claims that the chairman and the commission members' impartiality might reasonably be questioned because of the attorney's dual roles. We find no error in the chairman's and the commission's decisions not to recuse themselves from Judge Alred's proceedings on the basis of the attorney's participation in other litigation.

We find Judicial Ethics Opinion 96 helpful on this issue.[49] This advisory opinion of the Judicial Ethics Committee states that where a judge is sued in his official capacity as executive head of an administrative body and he hires outside counsel to represent him, there is no automatic, mandatory disqualification from other cases brought before the judge by that attorney or the attorney's law firm.[50] The committee distinguished this situation from one in which a judge hires an outside attorney to represent him in personal litigation. Where the attorney represents the judge only in his official capacity, "the appearance of bias and prejudice is not the same and disqualification is not required."[51] Likewise, the committee advises that where a judge is sued in his official capacity and the Attorney General's office represents him, the judge need not auto-

---

**48.** *Webb v. Commonwealth,* 904 S.W.2d 226, 230 (Ky.1995) ("A party's mere belief that the judge will not afford a fair and impartial trial is not sufficient grounds to require recusal.") (citation omitted).

**49.** 2002 WL 34684012 at *1 (2002).

**50.** *Id.*

**51.** *Id.*

matically disqualify himself from cases in which the Attorney General participates.[52]

"Kentucky's Court of Justice and the federal court system share virtually identical standards of judicial conduct regarding disqualification and recusal ...,"[53] A federal judge must also recuse "in any proceeding in which his impartiality might reasonably be questioned."[54] Federal case law generally does not require a judge to recuse under this statute where the attorney appearing before the judge has represented the judge only in his official capacity.[55] But recusal may be necessary where a judge's personal attorney is before him in a judicial proceeding.[56]

We are satisfied by the Judicial Ethics Opinions and federal case law that a judge is not required to recuse himself merely because an attorney appearing before the judge in an adversarial proceeding represented the judge at another time in his official capacity. SCR 4.110 authorizes the commission to employ any member of the Kentucky bar to gather and present evidence before the commission. The attorney hired by the commission to gather and present evidence regarding Judge Alred represented the chairman and commission members in federal litigation only in their official capacity. Both federal actions related to commission proceedings against

judges under the Kentucky Code of Judicial Conduct. The attorney's representation here would not cause a reasonable person with knowledge of all the relevant facts to doubt the chairman's or the commission members' partiality. So the chairman and commission members properly declined to recuse themselves on this ground.

### 3. Comments During Informal Hearing.

 According to Judge Alred, at one of the informal conferences before the issuance of formal charges, the chairman told Judge Alred, "You are not the avenging angel of Harlan County!" and said, "Everybody in Harlan County is a liar. They lie six different ways!" Judge Alred asserts that the chairman and commission members expressed a belief that Judge Alred violated the Code of Judicial Conduct while "acting as both the 'grand jury' and the tribunal."[57]

 A judge must recuse himself from any proceeding in which the judge has expressed an opinion concerning the merits of the proceeding or in which the judge has a personal bias against a party.[58] A federal judge must also disqualify from a proceeding in which the judge has a

**52.** Judicial Ethics Opinion 102 Revised, 2003 WL 26075565 at *1 (2003).

**53.** *Petzold,* 303 S.W.3d at 474.

**54.** 28 U.S.C. § 455(a).

**55.** *See, e.g., United States v. Zagari,* 419 F.Supp. 494, 505–06 (N.D.Cal.1976) (recusal not required where assistant U.S. attorney appearing in a criminal case previously represented the judge in his official capacity).

**56.** *See, e.g., Smith v. Sikorsky Aircraft,* 420 F.Supp. 661, 662 (C.D.Cal.1976) (order of district court recusing where law firm represent-

ing plaintiff hired an attorney who represented the judge personally and in his official capacity); *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1110 (5th Cir.1980) (recusal required *where judge was personally* represented by counsel and was engaged in business dealings with counsel).

**57.** We note that Judge Alred does not point to any comments made by other members of the commission. No factual basis exists supporting his request for recusal of the commission as a whole upon this ground.

**58.** KRS 23A.015(2)(a); *see also* SCR 4.300, Canon 3E(1)(a).

personal bias concerning a party.[59] The general rule, as articulated by the Sixth Circuit Court of Appeals, is that "[a] predisposition acquired by a judge during the course of the proceedings will only constitute impermissible bias when it is so extreme as to display clear inability to render fair judgment.[60] We hold that the chairman did not clearly err in declining to recuse himself on this ground because Judge Alred failed to carry the burden of showing the chairman expressed an opinion concerning the merits of Judge Alred's proceeding or displayed a clear inability to render a fair judgment.

There are no recordings or transcripts from the informal hearings in the record before us. Without providing the necessary context, Judge Alred cannot meet the "onerous burden" of showing facts of a character calculated seriously to impair the chairman's impartiality and sway his judgment. The chairman's alleged statements alone, although perhaps ill advised and harsh, do not show that his impartiality was impaired, his judgment swayed, or that he prejudged Judge Alred's case.

In response to Judge Alred's allegation, the chairman said that his comments were prompted by statements from individuals saying contradictory things. He said this would necessitate a hearing to determine the truth.[61] And the chairman asserted that he made the avenging-angel of Harlan County analogy while discussing in an informal hearing allegations that involved Judge Alred's stepping outside the bounds of his role as circuit judge. The chairman maintained that he remained committed to keeping an open mind and basing any decision on the evidence presented at the hearing.

As discussed above, it is appropriate for the commission to determine whether there is sufficient proof to bring formal charges and then adjudicate the charges. Comments regarding the existence of proof that tends to support the bringing of formal charges are not expressions of a belief that a judge is guilty of the charges. And, in *Withrow v. Larkin*, the Supreme Court explained that it would not "be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by the law."[62] We are persuaded that the chairman's comments addressed the existence of proof requiring a formal proceeding, and they are not indicative of an opinion that Judge Alred violated the Code of Judicial Conduct.

Nor do the chairman's comments reveal such a high degree of antagonism or bias that a fair judgment in Judge Alred's proceedings was impossible. The Supreme Court has held,

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of,

---

**59.** 28 U.S.C. § 455(b)(1).

**60.** *United States v. Howard*, 218 F.3d 556, 566 (6th Cir.2000) (citation and internal quotation omitted).

**61.** The chairman also asserted that he had no personal bias or animosity toward Judge Alred. He averred that his comments were taken out of context, and he did not call Judge Alred a liar or determine any particular individual was a liar.

**62.** 421 U.S. at 48–49, 95 S.Ct. 1456 (*quoting FTC v. Cement Inst.*, 333 U.S. 683, 702–03, 68 S.Ct. 793, 92 L.Ed. 1010 (1948)).

or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[63] And this Court has held that even when a trial judge makes an intemperate remark, "whether [the defendant's] rights [are] violated must be determined from the whole record."[64]

The fact that eleven of the counts against Judge Alred were dismissed, four because of insufficient evidence at the formal hearing, shows that the commission was aware of the varying standards applicable at each stage of the proceedings and belies Judge Alred's contention that a fair judgment was impossible. Moreover, as discussed below, with one exception, the commission's findings were supported by the facts; and its legal conclusions were supported by law. And Judge Alred was found to have violated the Code of Judicial Conduct in a majority of the charges by a unanimous vote of 6–0, of which the chairman comprised just one vote.[65]

At no point before issuing its final order did the chairman or commission members express a belief that Judge Alred was guilty of violating the Code of Judicial Conduct. Nor did they display a bias or antagonism toward Judge Alred that prevented him from receiving a fair judgment. So the commission members and the chairman did not clearly err by declining to recuse themselves from Judge Alred's proceedings.

### 4. Pre–Hearing Information.

 Judge Alred also contends it was error for the chairman and commission members not to recuse themselves because they received substantial prehearing information in the form of ex parte investigative reports and hearsay. According to Judge Alred, "[t]his alone is grounds for recusal for presumed, not actual, bias."[66]

Judge Alred relies on *Ice v. Commonwealth*[67] to support his argument. But, in *Ice*, a district court judge had lengthy ex parte conversations with prosecutors and investigating law enforcement officers to discuss whether a teenager accused of murder should be transferred to circuit court.[68] Judge Alred again fails to distinguish between the rights inherent to a defendant in a criminal prosecution and those in an administrative proceeding. *Ice* concerned a criminal prosecution, which entitled the defendant to the full array of procedural safeguards associated with a criminal prosecution. Judge Alred's proceeding was an administrative proceeding. And, as discussed in *Nicholson*, judicial disciplinary proceedings are administrative in nature, so they do not require the same type of procedural protections as criminal proceedings.[69] It is acceptable for an administrative agency to combine investigative and adjudicative functions.

---

**63.** *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (emphasis in original).

**64.** *Wilson v. Commonwealth*, 836 S.W.2d 872, 886 (Ky.1992) (citation omitted), *overruled on other grounds by St. Clair v. Roark*, 10 S.W.3d 482 (Ky.1999).

**65.** One count was decided by a vote of 5–2, and one count was decided by a vote of 4–2.

**66.** *Citing Ice v. Commonwealth*, 667 S.W.2d 671 (Ky.1984).

**67.** *Id.*

**68.** *Id.*

**69.** *Nicholson*, 562 S.W.2d at 308 (citations omitted).

SCR 4.170 specifically permits the commission to initiate a preliminary investigation and determine whether formal charges should be filed. So we see no irregularity in the commission's being aware of investigative reports before the formal hearing. In fact, it would be inappropriate for the commission to initiate formal proceedings against a judge without first reviewing the basis for bringing formal charges. So the chairman and commission members did not clearly err by declining to recuse on this ground.

**D. Because Judge Alred was Given a Sufficient Opportunity to Examine the Factual Information Before Formal Proceedings Began, his Rights Under SCR 4.170 were not Violated.**

██ Judge Alred alleges that the commission erroneously denied by order his request for the name of the complainants. SCR 4.170(4) states, "After the preliminary investigation is completed and before formal proceedings are initiated under Rule 4.180, the commission shall afford the judge under investigation an opportunity to examine all factual information, including the name of the complainant[,] if relevant." Without question, Judge Alred requested that the commission identify the original complainant. And although his motion to compel was denied, Judge Alred was sufficiently apprised of the identity of the complainants. On November 3, 2010, the commission provided Judge Alred with the only two complaints that were filed against him.[70] The complaints contained the identities of the complainants. For

this reason, the commission denied Judge Alred's later motion.

Judge Alred also alleges that the commission's investigator obtained exculpatory information before formal proceedings were initiated and failed to report that information to the commission or to Judge Alred in violation of SCR 4.170(4). He claims that the Harlan County Judge–Executive ultimately recanted his initial inculpatory statement to the investigator. But, at the formal hearing, the investigator testified that the judge-executive's comments concerned the Harlan County Commonwealth's Attorney's and the Harlan County Sheriff's personal preferences and religious beliefs. The investigator described these as personal attacks, and he testified that the judge-executive did not recant his previous statement. For this reason, he did not formally report the conversation to the commission or to Judge Alred, nor did he record the judge-executive's statements.

The judge-executive testified at the formal hearing that he no longer believed that Judge Alred retaliated against him. And the judge-executive wished the commission would dismiss the charges against Judge Alred that related to him. But the judge-executive's personal opinion about whether Judge Alred violated the Code of Judicial Conduct is not information bearing on the investigation, nor is it exculpatory. And the judge-executive did not recant any facts relevant to whether Judge Alred violated the Code of Judicial Conduct.

---

70. The letter sent to Judge Alred from the commission containing the complaints is not in the record. Counsel for the commission's response to Judge Alred's motion to compel production of the complainants' names indicates that additional copies of the letter were forwarded to Judge Alred, along with the re- sponse; but they were not filed in the record. Judge Alred complains that the commission issued a perfunctory order denying his motion to compel the commission to identify the complaining parties but fails to address the contention that he was previously provided this information.

Because the judge-executive's personal comments had no bearing on the merits of the investigation, Judge Alred's rights under SCR 4.170 were not violated when he was not made aware of the judge-executive's opinions before the hearing.[71]

### E. The Commission's Findings are not Clearly Erroneous or Unreasonable.

 Section 121 of the Kentucky Constitution authorizes the commission to remove a judge for good cause and designates the Supreme Court as the forum for judicial review.[72] For the commission to sanction a judge, the charges must be supported by "clear and convincing" evidence.[73] And a judge's conduct must be more than an erroneous legal decision made in good faith.[74] Accordingly, a judge may be properly sanctioned for a legal error when the judge acted in bad faith, engaged in a pattern of misconduct, or when the judge's "legal ruling or action [was] made contrary to clear and determined law about which there is no confusion or question as to its interpretation."[75] We must accept the findings and conclusions of the commission "unless they are clearly erroneous" or "unreasonable."[76]

Judge Alred contends that the commission's findings that he violated SCR 4.020 and the Kentucky Code of Judicial Conduct were clearly erroneous and resulted from a misapplication of the law. He also contends that the order itself is indicative of the commission's lack of impartiality.

We uphold the commission's findings regarding eight counts of misconduct, but we find that the commission's findings regarding Count V are clearly erroneous.

### 5. Count II.

 Judge Alred appeared at a Harlan County Fiscal Court meeting and advocated the use of $500,000, a sum donated by criminal defendants under a guilty-plea agreement in a Harlan Circuit Court case, to fund a water park. The commission found:

> [t]he proof of what occurred at the Harlan Fiscal Court meeting establishes that those in attendance were aware that [Judge Alred] was Judge of the Harlan Circuit Court[;] that [Judge Alred] spoke of the preliminary work which he had performed in regard to a water park for which [Judge Alred] was advocating the use of the funds[;] and during the course of the meeting, [Judge Alred] asserted that he had veto power over the use of the funds.

Accordingly, by unanimous vote, the commission concluded that Judge Alred violated SCR 4.020 and: (1) Canon 1, because he failed to maintain and enforce high standards of conduct and did not personally observe those standards so that the integrity and impartiality of the judiciary would be preserved; (2) Canon 2A, in that he did not respect and comply with the law and did not act at all times in a manner

71. We also note that Judge Alred was actually aware of the judge-executive's comments before the formal hearing. The judge-executive testified that Judge Alred contacted him about the allegations and proceedings several times leading up to the hearing. So even if the commission should have provided the judge-executive's statements to Judge Alred, its failure to do so was harmless.

72. *Gormley*, 332 S.W.3d at 725.

73. SCR 4.160; *Wilson v. Judicial Retirement & Removal Comm'n*, 673 S.W.2d 426, 427 (Ky.1984).

74. SCR 4.020(2); *see also Gormley*, 332 S.W.3d at 727 (citation omitted).

75. *Gormley*, 332 S.W.3d at 728 (citations omitted).

76. *Wilson*, 673 S.W.2d at 427–28.

that promoted public confidence in the integrity and impartiality of the judiciary; (3) Canon 2D, by allowing family, social, political, or other relationships to impair his objectivity and by lending the prestige of his judicial office to advance the private interests of himself or others; and (4) Canon 4C(1), by improperly appearing at a public hearing that was not concerned with issues of fact or policy on matters of improvement of the law, the legal system, or the administration of justice, and in which he was not acting pro se in a matter involving him or his interests.

Judge Alred claims these findings are clearly erroneous because he appeared at the fiscal court meeting in his private-citizen capacity, not as a circuit court judge. And he personally advocated, as a citizen of the county and a father of young children, for the Harlan County Fiscal Court to use the money for a water park. We disagree and uphold the commission's findings under Count II.

The transcript from the Harlan County Fiscal Court meeting contains more than adequate proof that Judge Alred used his judicial office to advance his personal objectives. Judge Alred advocated that the fiscal court use the $500,000 donation to establish a water park in the county. Judge Alred explained that he engaged in preliminary discussions with the owners of other water parks, and one company expressed interest in conducting a feasibility study for a water park in Harlan County.

When an attendee at the meeting suggested the fiscal court allocate part of the donation to a program run by the sheriff's department, Judge Alred immediately interrupted him saying, "I would object wholeheartedly, absolutely not. I did retain the court's ability to veto something

like that . . . there is a court order giving me absolute veto power over that. . . ." When asked whether he had final authority over the fiscal court's use of the funds, Judge Alred replied, "I can approve. I can veto anything that goes outside of that domain that you have in there, youth programs and facilities."

We are unconvinced by Judge Alred's assertions that he was merely personally advocating that the Harlan County Fiscal Court use the donation for a water park. He invoked his judicial authority under the circuit court order to veto the suggestion that the fiscal court use the money in a manner with which he personally disagreed. In doing so, Judge Alred violated Canons 1, 2A, 2D, and 4C(1). We find that the commission's findings under Count II are not unreasonable or clearly erroneous.

### 6. *Count III.*

■ Judge Alred issued an order in January 2010 allowing a criminal defendant to make a $250,000 donation through the Harlan County Fiscal Court to alleviate drug abuse in Harlan [C]ounty, with use of the funds "subject to the approval of the Judge of the Harlan Circuit Court."[77] Later, Judge Alred attended the Harlan County Fiscal Court meeting—as discussed above—during which he asserted that he retained veto authority over the donation. When the issue was made public in the media, the Executive Secretary of the Judicial Conduct Commission sent Judge Alred a letter requesting the legal authority that permitted him to retain oversight of the funds. After receiving the letter in March 2010, Judge Alred issued an order amending the January 2010 order. The amended order removed the lan-

**77.** This $250,000 donation was part of the $500,000 donation to the fiscal court dis-

cussed above in Count II.

guage granting oversight of the donated funds to the Judge of Harlan Circuit Court. The amended order stated that the "language was inadvertently put into [the January 2010] order by counsel for the [d]efendants and the [c]ommon-wealth['s] [a]ttorney's [o]ffice" and "was neither solicited nor approved by this Judge."

By unanimous vote, the commission found that these statements in the amended order were blatant misrepresentations and concluded that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes confidence in the integrity and impartiality of the judiciary; and (3) Canon 3A [78] and B(2),[79] by being unfaithful to the law.

Judge Alred maintains that he inadvertently included in the January 2010 order the language granting him oversight of the donated funds. This, he claims, was a legal error that cannot be grounds for punishment. And he asserts that he simply modified the order after the commission brought the mistake to his attention. Again, we are unconvinced by Judge Alred's contentions.

By way of background: The criminal defendants moved the circuit court for leave to make a donation "through the Harlan Fiscal Court to alleviate drug abuse in Harlan [C]ounty, with the use of these funds to be subject to the approval of the Judge of the Harlan Circuit Court." The terms of the motion were discussed in open court.[80] And this language appears verbatim in the January 2010 order signed by Judge Alred.

Proof that Judge Alred knew and approved of the language granting him oversight of this substantial gift comes from his participation in the Harlan County Fiscal Court meeting. As discussed above, Judge Alred unequivocally informed the fiscal court that he retained "absolute veto power" over the funds. So we hold that the commission did not clearly err by finding that Judge Alred's March 2010 amended order, stating that oversight of the funds "was neither solicited nor approved by this Judge," was a misrepresentation rather than a legal error, in violation of the Code of Judicial Conduct.

### 7. Count V.

█ On two occasions, Judge Alred questioned the principal of his children's elementary school about why a certain defendant continued to work as a substitute teacher at the school while she had pending fraud charges in the Harlan Circuit Court. When the principal informed him

---

78. Canon 3 provides, "A judge shall perform the duties of judicial office impartially and diligently." Canon 3A specifically provides, "The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law." SCR 4.300.

79. Under Canon 3B(2), "A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor[,] or fear of criticism." SCR 4.300.

80. Moreover, at the formal hearing before the commission, the Harlan County Commonwealth's Attorney testified that he discussed the terms of the plea agreement with Judge Alred before the motion was heard in open court. Judge Alred initially indicated that he wanted the donated funds to go to the Bluegrass Challenge Academy and the drug court. He later changed his mind and wanted the funds designated for a water park. In light of Judge Alred's waffling on the matter, the commonwealth's attorney recommended leaving the use of the money subject to the judge's discretion.

that the pending charge did not prevent the defendant from working as a substitute teacher, Judge Alred changed the conditions of the defendant's pretrial release to specify that she could not work as a substitute teacher and remain free on bond.

The commission found that Judge Alred changed the defendant's bond conditions without a hearing or giving notice to the defendant. And, by a vote of 4–2, the commission found that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; (3) Canon 3A and B(2), because he was not faithful to the law; and (4) Canon 3B(8),[81] by failing to dispose of judicial matters fairly.

Judge Alred contends that he imposed the additional bond condition in open court, with the defendant represented by counsel. He asserts that he was entitled to act as he did because judges have wide discretion in setting the terms of pretrial release. Essentially, he claims he did not commit a legal error, let alone a bad faith or egregious error.

We hold that the commission's findings regarding Count V are clearly erroneous because they are not supported by sufficient evidence. If Judge Alred believed that the defendant's work as a substitute teacher constituted a material change in her circumstances, the appropriate procedure was to hold an adversary hearing.[82] After the hearing, he was entitled to change the defendant's terms of release only if clear and convincing evidence of the material change existed and a substantial risk of nonappearance was present. Counsel for the commission did not present any evidence at the formal hearing that Judge Alred changed the offender's terms of pretrial release without holding a due process hearing. So we must hold that the commission's determination that Judge Alred violated the Code of Judicial Conduct under Count V is clearly erroneous.[83]

### 8. *Count VI.*

██ During the course of a hearing in Harlan Circuit Court related to a civil action for wrongful-death, the defendant presented Judge Alred with an affidavit signed by the Harlan County Judge–Executive supporting the defendant's motion for Judge Alred's recusal. The affidavit stated that Judge Alred had requested that the judge-executive use the county's power to regain control of certain county-owned property leased to the defendant. According to the affidavit, Judge Alred wanted the property for use as a site for drug testing.

Upon reading the affidavit, the video record of the Harlan Circuit Court showed that Judge Alred became visibly upset.[84] Later that day, Judge Alred issued an order to convene a special grand jury to "investigate illegal drug trafficking by the

---

**81.** Canon 3B(8) states, "A judge shall dispose of all judicial matters promptly, efficiently[,] and fairly." SCR 4.300.

**82.** Kentucky Rules of Criminal Procedure (RCr) 4.42(1), (4), and (5).

**83.** The commission also found that Judge Alred ordered the defendant to undergo drug tests without a legal basis. We note that counsel for the commission presented no evidence at the formal hearing to support this

allegation. So this factual finding by the commission is also clearly erroneous.

**84.** Judge Alred abruptly terminated the hearing and scheduled a hearing at which the judge-executive was to appear and testify about the facts in his affidavit. This hearing never occurred because the following day, Judge Alred recused for reasons other than those stated in the judge-executive's affidavit.

Harlan County Judge[-]Executive from the Harlan County Judge[-]Executive's Office as a result of an ongoing investigation by the Harlan County Sheriff's Department." The date for prospective grand jurors to appear in response to the summons was one week after the primary election, in which one of Judge Alred's cousins was a candidate opposing the incumbent for the office of county judge-executive.

The commission found, by unanimous vote, that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; (3) Canon 3A and B(2), by not being faithful to the law; (4) Canon 3B(8), by failing to dispose of judicial matters fairly; and (5) Canon 3E(1)(a),[85] by failing to disqualify in a proceeding in which his impartiality might reasonably be questioned because he had a personal bias or prejudice concerning a party.

Again, Judge Alred does not dispute the pertinent facts. But he claims his issuance of the special grand jury order identifying the judge-executive's office as the subject of the investigation is unrelated to the judge-executive's affidavit presented earlier in the same day. Although he admits that the affidavit angered him, Judge Alred asserts that he was merely carrying out his duties as circuit judge by issuing the special grand jury order. According to Judge Alred, he and the Harlan County Commonwealth's Attorney agreed to call a special grand jury before he was presented with the affidavit. It was simply a coincidence, Judge Alred claims, that he issued the order on the same day he received the upsetting affidavit.[86]

Despite Judge Alred's assertions, we hold that it was not clearly erroneous or unreasonable for the commission to find that Judge Alred's actions violated Canons 1, 2A, 3A, 3B(2), 3B(8), and 3E(1)(A). The record does not support Judge Alred's version of the events. The judge-executive's office was investigated for drug trafficking by the Harlan County Sheriff's Department, who consulted the Attorney General's Office. After several months, the Attorney General's Office closed their investigation, finding no evidence of wrongdoing. The Harlan County Commonwealth's Attorney testified that he initially agreed that the case should proceed to the grand jury. Although he expected the grand jury to return a no true bill, he considered it necessary to avoid the appearance of a political cover up. The commonwealth's attorney even agreed with Judge Alred that it would be a good idea to call a special grand jury with jurors drawn from a different county in order to avoid the potential for political bias. At the time he discussed this with Judge Alred, the investigation was not publicly known. So he did not think it necessary to present the matter to the grand jury before the primary election.

The commonwealth's attorney testified that he did not see the special grand jury

---

**85.** Canon 3E(1)(a) provides, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." SCR 4.300.

**86.** Judge Alred also testified that he included the purpose of the special grand jury in the order to limit the accusations that could be brought against the judge-executive in the proceeding. He claimed that his motivation was to protect the judge-executive.

order before Judge Alred issued it. And he disapproved of naming specifically the judge-executive's office in the order on the eve of the election and timing the convening of the special grand jury a week after the primary election. He also testified that the order's statement that there was an ongoing investigation was misleading because, for all intents and purposes, the investigation was over.

When the commonwealth's attorney learned of the special grand jury order, he brought the case to the regular grand jury before the occurrence of the primary election. He did so because he knew the grand jury would return a no true bill, and he thought it was fair that the incumbent judge-executive's name be cleared before the primary election.

The commission found that Judge Alred issued the special grand jury order with the intent of discrediting the incumbent judge-executive on the eve of the primary election, in which Judge Alred's cousin was also a candidate, and in retaliation for the judge-executive's affidavit in the civil case. Based on the record, we cannot say that the commission's findings are clearly erroneous or unreasonable.[87]

### 9. Count VII.

█ Judge Alred viewed videotapes in the office of the Harlan County Sheriff regarding the investigation of the Harlan County Judge–Executive referred to above.[88] Judge Alred reviewed this evidence lacking any request for issuance of an arrest warrant or a search warrant and before any related matter was pending in the circuit court. By unanimous vote, the commission found that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; (3) Canon 3A and B(2), by being unfaithful to the law; and (4) Canon 3B(7), by initiating ex parte communications with regard to an impending proceeding.

Judge Alred admits that he viewed the evidence in the sheriff's office, but he claims the sheriff initiated the encounter. He also asserts that the ex parte communication was not prohibited because the communication was with law enforcement, not parties or attorneys. So Judge Alred contends that the commission clearly erred by basing its findings on an erroneous application of the law. We disagree.

Canon 3B(7) prohibits a judge from initiating, permitting, or considering ex parte communications with attorneys or parties

---

87. The commission found that Judge Alred violated Canon 3E(1)(a) by failing to disqualify in the wrongful-death case. With respect to this violation, it is unclear upon what facts the commission determined that Judge Alred should have recused. Because we uphold the commission's findings that Judge Alred's actions under Count VI constituted violations of Canons 1, 2A, 3A, and 3B(2), we need not address the commission's findings on this point. But we note that Canon 3E(1)(a) and KRS 26A.015 provide that a judge must recuse himself in any proceeding where he has a personal bias or prejudice concerning a party. As discussed below, two years before the instant civil case, Judge Alred was the

complaining witness to law enforcement, which resulted in a felony charge against the defendant in the wrongful death civil case. At no time during the pendency of the civil case did Judge Alred disclose his involvement as the complainant in the criminal case. Judge Alred was required to disqualify himself from the proceeding because his impartiality might reasonably be questioned.

88. This review occurred before Judge Alred issued the order setting a special grand jury investigation into alleged drug trafficking out of the Harlan County Judge–Executive's Office.

concerning a pending or impending proceedings. The accompanying commentary says that this prohibition includes communications from lawyers and other persons who are not participants in the proceeding. The commentary further warns that a "judge must not independently investigate facts in a case and must consider only the evidence presented."

The record supports the commission's finding that Judge Alred violated Canon 3B(7). It was not clearly erroneous for the commission to conclude that Judge Alred initiated the ex parte communication. And whether or not the sheriff initiated the ex parte communication, Judge Alred permitted and considered the communication. Ex parte communication with law enforcement officers regarding an impending case is prohibited by Canon 3B(7).[89] The same objections to ex parte communications between judges and attorneys involved in an impending criminal matter apply to ex parte communications between judges and law enforcement, including the concern that "the trial judge may form an opinion as to the truth of the evidence before it may be answered and

challenged."[90] Although there is some evidence in the record that Judge Alred stopped by the sheriff's office on that occasion to sign an arrest or search warrant, the warrant was unrelated to the investigation into the judge-executive's office. And contrary to the dissent's claim, Judge Alred did not watch the videotape in anticipation of calling a special grand jury. When Judge Alred viewed the evidence, this was the first time he learned of the allegations against the judge-executive. This ex parte contact occurred before Judge Alred discussed the possibility of calling a special grand jury with the commonwealth's attorney. We hold that the commission's findings regarding Count VII are not clearly erroneous of unreasonable.

### 10. Count IX.

■ The commission found that Judge Alred urged the Kentucky State Police to investigate and the Harlan Commonwealth's Attorney to pursue criminal charges that ultimately became two Harlan Circuit Court cases. Judge Alred then presided over these cases despite the fact

**89.** *See, e.g., In re Peck,* 177 Ariz. 283, 867 P.2d 853, 856 (1994) ("Respondent twice engaged in significant [ex parte] communications, first with the litigant's family and friends and then by arguing on their behalf with a law enforcement official. As the [c]ommission concluded, this clearly violates Canon 3(A)(4), which provides that '[a] judge should … neither initiate nor consider ex parte applications concerning a pending or impending proceeding.' "); *see also Ice,* 667 S.W.2d at 680–81 (concurring opinion by Justice Leibson) ("While [the defendant's] case was pending in Juvenile Court[,] the [d]istrict [j]udge met with the [commonwealth's attorney] and a Kentucky State Police detective who was investigating the case[ ] and discussed the case at great length.... In the first place[,] neither the judge nor the [commonwealth's attorney] should ever have participated in such a conversation. The trial judge should insist that neither the prosecutor nor the defense coun-

sel nor any other person discuss a pending case with the judge [ex parte]. In such circumstances, prejudice must be presumed. In the second place, after participating in such a conversation, the judge was obliged to recuse himself. KRS 26A.015(2)(b) mandates that a judge recuse himself when he has 'personal knowledge of disputed evidentiary facts concerning the proceedings.' This relates directly and particularly to an [ex parte] proceeding such as took place here.").

**90.** *United States v. Earley,* 746 F.2d 412, 416 (8th Cir.1984) (citation omitted) (referring to the danger of ex parte communications between a judge and a prosecutor; also noting the danger that the court will possess a body of information that never becomes part of the record and remains unknown to the defendant).

he was the initial complaining witness.[91] Based on these findings, the commission concluded, by unanimous vote, that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; (3) Canon 3A and B(2), by being unfaithful to the law; (4) Canon 3B(8), by failing to dispose of judicial matters fairly; and (5) Canon 3E(1)(A), by failing to disqualify in a proceeding in which his impartiality might reasonably be questioned because of his personal bias or prejudice concerning a party.

Judge Alred claims the commission's findings on this count are clearly-erroneous because he did not urge law enforcement to investigate the matter. Rather, he merely passed along allegations of illegal gambling machines at gas stations. Judge Alred asserts that he was not required to recuse himself from the resulting criminal cases because there was no objection to his sitting, and the only related proceeding before him was an agreed order of dismissal from the commonwealth's attorney before the defendant was arraigned.

Again, we hold that the commission's findings regarding this count are not clearly erroneous. Judge Alred testified that he received several complaints from citizens concerning the alleged gambling operations. And he admitted that he called law enforcement's attention to the very defendant who later appeared before him in court on charges arising from the investigation. Although judges should alert the authorities to potential criminal activity, it is incumbent the judge recuse himself from criminal cases that arise from those allegations. Judge Alred specifically identified the defendant to law enforcement, received that same defendant's indictment when returned by the grand jury, and disposed of the case by approving an agreed order of dismissal.[92]

While it is true that a party must move for recusal immediately after discovering the facts upon which the disqualification rests, absent a timely motion for recusal, a trial judge is obligated to disqualify himself "when presiding over a matter that would violate statutory mandates for impartiality."[93] Canon 3E(1)(a) and KRS 26A.015 provide that a judge **shall** recuse himself in any proceeding in which he has a personal bias concerning a party or where he has knowledge of any other cir-

91. Later, Judge Alred also presided over a civil case in which the criminal defendant was a party. The civil matter was the same one in which Judge Alred recused himself upon receipt of the county judge-executive's affidavit described in Count VI.

92. To support the claim that Judge Alred's conduct here was innocuous, the dissent compares this situation to that in which a judge finds that a defendant consumed illegal drugs and terminates the defendant's drug court status, then later sits on a probation revocation proceeding based on the same conduct. But the situation the dissent describes involves information that the judge obtained wholly through judicial proceedings. "Recusal is appropriate only when the information

is obtained from an extrajudicial source." *Bussell v. Commonwealth,* 882 S.W.2d 111, 112 (Ky.1994). Here, Judge Alred obtained potentially incriminating information about individuals from extrajudicial sources—citizens in the community. He then reported this information to law enforcement and requested that they investigate the matter. This led to two criminal indictments. Because Judge Alred gathered information about the impending matters from extrajudicial sources, he was required to recuse when those cases came before him as judge.

93. *Johnson v. Commonwealth,* 231 S.W.3d 800, 809 (Ky.App.2007) (citations omitted); *see also Petzold,* 303 S.W.3d at 471 (citation omitted).

cumstances in which his impartiality might reasonably be questioned.[94] Whether a defendant has properly preserved a disqualification issue for review is a separate issue from whether a judge violated the mandatory requirements of Canon 3E(1)(a) and KRS 26A.015.

This was an egregious error, not a good faith legal mistake. And it is yet another instance of Judge Alred's pattern of misconduct. Based on the record, the commission did not clearly err by finding Judge Alred violated Canons 1, 2A, 3B(8), and 3E(1)(a).[95]

### 11. Count XII.

■■■ Judge Alred filed a complaint against Kentucky Utilities with the Public Service Commission. Early in the pendency of the case, Judge Alred decided to voluntarily dismiss his complaint. So he contacted counsel for KU to inform them that he wanted dismiss his complaint. While on the phone, he urged counsel for KU to agree to donate $12,500 for playground equipment at the elementary school that Judge Alred's children attend.

By unanimous vote, the commission found that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A,

by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; (3) Canon 2D, by lending the prestige of his office to advance his private interests; and (4) Canon 4C(3)(b)(i)[96] and (iv),[97] by personally participating in fund-raising and using the prestige of his office for fund-raising. On appeal, Judge Alred claims that he did not violate the Code of Judicial Conduct because he was merely settling a private claim, not fund-raising.

We find that the commission's findings are not clearly erroneous or unreasonable. At the formal hearing, Judge Alred admitted that he did not dismiss the suit in exchange for the $12,500 donation that he redirected to the school. Rather, he was going to dismiss the suit whether or not KU donated the money for the playground. This testimony clearly supports the finding that Judge Alred's solicitation was purely a fund-raising activity. Judge Alred personally solicitated the donation from counsel for KU. This constitutes personal participation in the solicitation of funds prohibited by Canon 4C(3)(b)(i).[98] A judge is prohibited from using the prestige of judicial office as leverage for fund-raising for any cause, no matter how worthy or popularly appealing the judge may con-

---

94. (Emphasis added.) And the commentary to Canon 3E(1) advises that a "judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification."

95. We note that the evidence at the formal hearing does not support a finding that Judge Alred urged the Harlan Commonwealth's Attorney to pursue criminal charges against the defendant. But this does not change the conclusion that Judge Alred violated the Code of Judicial Conduct because the evidence does show that he urged law enforcement to investigate the defendant's conduct.

96. Canon 4C(3)(b)(i) provides, in pertinent part, "A judge ... shall not personally participate in the solicitation of funds or other fund-raising activities." SCR 4.300.

97. Under Canon 4C(3)(b)(iv), a judge "shall not use or permit the use of the prestige of judicial office for fund-raising or membership solicitation." SCR 4.300.

98. The dissent suggests that this non-solicitation Canon is unconstitutional. But a constitutional challenge was never identified, briefed, or argued by Judge Alred. And we decline to review it as such on our own motion.

sider that cause to be. Because requesting funds for an organization is prohibited, it was improper for him to request a donation to a school.[99]

This solicitation is also part of a pattern of misconduct. As discussed below, Judge Alred admitted to other instances in which he personally participated in fund-raising activities for the school's playground in violation of the Code of Judicial Conduct. So we uphold the commission's findings regarding Count XII.

### 12. Count XIII.

■ Judge Alred participated in fund-raising activities in which he raised funds from companies and individuals for the purchase of playground equipment for the elementary school his children attended. The commission found, by unanimous vote, that he violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; (3) Canon 2D, by lending the prestige of his judicial office to advance his private interests or the private interests of others; and (4) Canon 4C(3)(b)(i) and (iv), by personally participating in fundraising and using the prestige of his judicial office.

Judge Alred admits that he violated the Kentucky Code of Judicial Conduct by personally participating in fund-raising. He claims only that he should not be removed from office for this violation. Because we uphold the commission's findings regarding the other counts of misconduct, Judge Alred is not being removed from office based only on the violation of the Code of Judicial Conduct in Count XIII. Rather, this violation is part of a pattern of misconduct by Judge Alred that justifies his removal from office.

### 13. Count XVII.

■ Judge Alred summarily removed an assistant public defender as counsel in all cases she had pending in Harlan Circuit Court. The order was entered on the judge's own initiative, without a legal basis, and without an opportunity for the assistant public defender to be heard. By a vote of 5–1, the commission found that Judge Alred violated SCR 4.020 and: (1) Canon 1, by failing to observe high standards of conduct; (2) Canon 2A, by failing to respect and comply with the law and to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; and (3) Canon 3A and B(2), by being unfaithful to the law.

Judge Alred asserts that the attorney had a long history of nonappearance in his and other courts. And he claims he had the discretion to remove the assistant public defender in order to protect criminal defendants' Sixth Amendment rights. We disagree.

■ Indigent representation in Harlan County is overseen by the Department of Public Advocacy (DPA) under Chapter 31 of the Kentucky Revised Statutes.[100] KRS

---

99. We also note that the Commentary to Canon 4C(3) explains that "solicitation of funds for an organization ... involve[s] the danger that the person solicited will feel obligated to respond favorably to the solicitor if the solicitor is in a position of influence of control." Judge Alred was the only circuit judge in Harlan County. And it is not improbable that KU would have to appear in front of him in future litigation.

100. A county may submit a local plan to provide representation to indigents under KRS 31.065(1). If a county chooses not to submit a plan, then indigent representation is handled by the DPA under the statutory frame-

31.030(12) authorizes the DPA to assign a substitute attorney "for good cause." Whether good cause exists to substitute an assistant public defender lies within the discretion of the trial court.[101] But a trial court must make a good cause determination before DPA can provide substitute counsel.[102] A trial court may invoke its inherent judicial power and step outside this statutory framework only as a last resort.[103] Only "when the Department fails or refuses to act, and all other means are exhausted, may the circuit court go outside of the statutory framework."[104] A trial court must "proceed according to the mandates of the statute until there is simply no other option."[105]

Judge Alred did not remove the assistant public defender from 24 cases on his docket as a last resort. Regardless of whether the attorney was consistently absent from court, Judge Alred was required to work within the statutory framework of Chapter 31 and make a good cause determination to allow DPA to assign a substitute attorney in her cases. Judge Alred testified that he discussed the assistant public defender's non-attendance with the local DPA directing attorney. But he did not pursue further measures, such as a show cause hearing or contempt finding. Nor did he make a good cause determination.

It was not clearly erroneous or unreasonable for the commission to find implicitly that Judge Alred's actions constituted an egregious legal error for which a sanction is appropriate. Judge Alred made no attempt to discover or comply with the law concerning removal of appointed counsel.

He simply entered an order on his own initiative, without citing legal authority for his actions. Contrary to the dissent's protestation that this is not an ethical breach worthy of the Court's attention, Judge Alred's actions display a blatant disregard for the orderly processes of the law. Moreover, this is yet another instance in a pattern of misconduct.

## III. CONCLUSION.

We uphold the commission's order as to eight counts of misconduct by Judge Alred, and we reverse the commission's findings as to Count V. From our review of the record, it is clear that Judge Alred engaged in a pattern of misconduct, displaying disregard for the law and the Kentucky Code of Judicial Conduct. He continually refuses to accept responsibility for his actions or acknowledge his wrongdoing. Accordingly, we agree with the commission that there is good cause under Section 121 of the Kentucky Constitution to remove Judge Alred from his judicial office for misconduct, as defined in the Kentucky Code of Judicial Conduct.

All sitting. NOBLE and SCHRODER, JJ., concur. VENTERS, J., concurs by separate opinion in which ABRAMSON, J., joins. CUNNINGHAM, J., concurs, in part, and dissents, in part, by separate opinion in which SCOTT, J., joins.

VENTERS, J., Concurring:

I am compelled to add this separate, concurring opinion because neither the majority opinion nor the dissent of Justice Cunningham succinctly or plainly de-

work provided in Chapter 31 of the Kentucky Revised Statutes.

101. *Pillersdorf v. Dep't of Pub. Advocacy*, 890 S.W.2d 616, 621 (Ky.1994).

102. *Id.*

103. *Id.* at 622.

104. *Id.* (internal quotations omitted).

105. *Id.*

scribes the conduct that, in my view, most clearly warrants the condemnation of this Court, especially since that conduct remains unmitigated by any redemptive expression of remorse or regret. When two accused drug trafficking offenders in Judge Alred's court were permitted by the judge to pay a total of a half million dollars ($500,000.00) in exchange for the judge's order dismissing the charges,[106] one of three things occurred:

· two innocent defendants paid a king's ransom in order to buy an acquittal; or,
· two guilty defendants were allowed to buy their way out of the justice system for a very large "slush fund" controlled by the judge; or,
· one defendant was innocent and the other guilty, resulting in a combination of the aforementioned evils.

Justice Cunningham is clearly correct when he says that Judge Alred "simply has not learned how to conduct himself as a judge." Our responsibility in a judicial discipline case is not to punish the offending judge, and the result of this case is not for the purpose of punishing Judge Alred. Our duty is to assure the people of Kentucky that judges will "conduct themselves as judges." Judge Alred has offered no sign of contrition, remorse, or regret for the worst of the charges against him. He shows no sign that he recognizes that he has failed to conduct himself as a judge. He therefore gives us no assurance that his future conduct would differ in any significant way from his past conduct. Had he convincingly done so, I could have supported a lesser sanction. The judge is entitled to hold his own views on whether his conduct was proper. But as he is

bound by his views, I am bound by mine. And, I am further charged as a member of this Court with the responsibility of enforcing the established rules of appropriate judicial conduct. Given the number of incidents and the serious nature of the improper conduct, coupled with the absence of any indication of an attitude receptive to reform, the only responsible course open to this Court is the sanction imposed by the majority opinion.

ABRAMSON, J., joins.

CUNNINGHAM, J., Concurring in Part and Dissenting in Part:

Judge Alred has not killed or physically injured anyone. He has not molested his secretary. He has not stolen a dime. In fact, he hasn't even been charged with a crime of any kind—misdemeanor or felony. None of his friends or family members have gotten rich or gone free because of his missteps. He has not enriched himself financially nor engaged in any kind of debauchery.

His judicial misconduct has been primarily on behalf of children and against criminals. In all his excessive exuberance, he has failed to grasp his professional responsibility. He simply has not learned how to conduct himself as a judge. The heat of his passion for his community, including children, has singed his judicial robes. His misbehavior brings to mind the words of Shakespeare's Othello: "When you shall these unlucky deeds relate, speak of me as I am; nothing extenuate, nor sit down aught in malice; then must you speak of one who loved not wisely but too well."

I know that in the past, at least, we have had judges convicted of crimes who contin-

106. To be more specific, five felony charges were dismissed against the accused offenders, both of whom were doctors, in exchange for their pleas of guilty to one misdemeanor offense, which the judge was assured would result in the suspension of the offenders' privileges to prescribe medications.

ued to serve on the bench. Therefore, I concur in part and dissent strongly in part. I concur with the adept handling of the constitutional issues by the Chief Justice. I dissent as to the penalty of removal from office, as well as our Court's treatment of some of the charges.

First of all, I am against affording our duly elected state judges less protection from removal from office than federal judges who are appointed for life. In regards to the removal of federal judges from office, Article II, § 4 of the U.S. Constitution lays out express phrasing: "The President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors." Federal courts have wrestled through the ages as to what constitutes "other high Crimes and Misdemeanors," but never have they wavered from the necessity that such be found before a "civil Officer" is removed from office.

Section 121 of the Kentucky State Constitution invests this Court with authority to remove a judge for "good cause." Judges in Kentucky are subject to close scrutiny by the electorate every four years for district judges, and eight years for other judges and justices. The federal judges are not. Therefore, I think our state judges, whose conduct is regularly being reviewed by the electorate, deserve equal protection from removal. The standard for "good cause" should at least require being guilty of committing some crime, either felony or misdemeanor. Judge Alred has not been adjudicated guilty of any crime by any court, or even by the majority opinion entered against him here today.

I also take issue with the substance of some of the charges. I question the broad, sweeping edicts of this Court in dealing with those ethical issues. They bode troublesome for future cases.

The most serious of the alleged wrongdoing by Judge Alred centers on what appears to be a simmering and ongoing feud between him and the Harlan County Judge–Executive. At this level of review, it is impossible for us to accurately assess the local political and social intrigue entangled in these acts. I do not believe this Court can tell from the record whether Judge Alred's running gun battle with the judge-executive originated from a genuine concern for law and order in his community—regressing into a political street brawl—or whether it was born on the wings of a personal vendetta from the start. That's why it is best that the hearts of the protagonists be searched by the electorate rather than by us.

It does appear that Judge Alred was not alone in his attention to the judge-executive. The Harlan County Sheriff conducted an investigation into alleged drug dealing by the judge-executive, and the Commonwealth's Attorney independently decided to present this information to a special grand jury—apparently for the purpose of formally exonerating the county chief executive officer. Judge Alred jumped into the affray in an inappropriate manner. His timing and motive for calling the grand jury may have been unacceptable, but we go too far in our opinion in condemning ex parte communication with law enforcement.

I dissent from this Court's treatment of the issue concerning Judge Alred's personal settlement-with Kentucky Utilities after he filed a complaint with the Public Service Commission. I read nothing in the opinion of the majority that would indicate that this was anything but a private matter. He apparently dismissed the claim without requesting any compensation for himself, but "urged" Kentucky Utilities to

donate $12,500 for the purchase of playground equipment at the local elementary school. Such a dastardly deed chills the blood. If Judge Alred had demanded the money for himself as settlement of his claim, then it apparently would not have justified our discipline. But because he sought a donation for playground equipment it does. The general public will not understand this logic, and neither do I.

The U.S. Sixth Circuit Court of Appeals has ruled that the bar on political solicitation is "overbroad and thus invalid on its face." *Marcus Carey v. Stephen D. Wolnitzek, et al.*, 614 F.3d 189, 207 (6th Cir. 2010). *See also* SCR 4.300, Canon 5(B)(1)(c). I would suggest that Canon 4(C)(3)(b)(i) and (iv) which prohibits judges from personally participating in fund-raising for worthy causes has to be on constitutional life support.

It is inconceivable to me that the Sixth Circuit Court of Appeals is going to hold that a judge can solicit money for his or her own personal and political gain, and deny that judge the right to solicit money for an altruistic purpose. Therefore, I suggest that, in all likelihood, the Judicial Canon under which Judge Alred is condemned in this charge is on its way to the U.S. Constitutional trash bin.

I strongly dissent to disciplining Judge Alred for firing a public defender who was constantly a no-show in his court, thereby placing indigent defendants and the court system at risk. We condemn his acts with a lot of form and scripture. Judges have a duty to run their courts in a fair and efficient manner. This includes the attempt to bar incompetent and irresponsible public defenders. Granted, that authority is not unbridled and the Court correctly points to the legal impediments to that end. Judge Alred did not follow the playbook word for word. But the entering of the order dismissing the offensive

public defender from his court was simply a procedural error and not an ethical violation. Regional and state directors of our public defenders are, in my opinion, able and competent lawyers and administrators, plenty capable of taking care of themselves. There was not a breach of judicial canons worthy of our attention or the attention of the commission. It seems to me to be a case of "piling on."

The majority upholds the punishment of Judge Alred for viewing videotape evidence in the Harlan County Sheriff's office regarding the investigation of the Harlan County Judge–Executive. It appears from the footnote, as well as other parts of the opinion, that this videotape was watched before he convened the special grand jury. The Chief Justice states on page 440 of the majority opinion the following: "The commonwealth's attorney even agreed with Judge Alred that it would be a good idea to call a special grand jury with jurors from a different county" to consider the investigation of the judge-executive. Whether it was Judge Alred's intent at the time, watching the video definitely provided, in part at least, the basis for calling the special grand jury. It is only logical that seeing the evidence would come before any discussion of calling a special grand jury. Since this apparently was the case, there was nothing at all wrong with Judge Alred viewing the evidence which formed the basis for calling the special grand jury.

Special grand jury investigations are expensive, both in the money they expend and the human toil and trouble they cause. Regular grand juries are established by law. Special grand juries are convened solely at the discretion of the Chief Circuit Judge. KRS 29A.220. This convening authority cannot operate in a vacuum. Special grand juries are limited to ninety days, unless extended by the judge. How does the judge know if one needs to be called?

Through ex parte communications with law enforcement, the Commonwealth's Attorney, or other citizens. How does the judge know when one needs to be extended? Through ex parte conversations with the Commonwealth's Attorney.

During my fifteen years on the circuit court bench, I never convened a special grand jury. However, as Commonwealth's Attorney, I worked with one which lasted for two weeks and was convened by then circuit judge and future Federal District Court Judge Edward H. Johnstone. We were in constant communication with each other as to the status of the special grand jury. Judge Johnstone was continually prodding me to "wrap it up." He was simply taking care of business.

I fear that our Court's opinion today says far too much in our effort to support a charge against Judge Alred. No circuit judge should ever call a special grand jury without good cause. Therefore, it is not only appropriate, but good judgeship, to become fully acquainted with the need for such action before calling one. This could include viewing a videotape of the investigation in the sheriff's office.

Judge Alred can seemingly do no good. He is condemned for calling a grand jury in retaliation against the judge-executive, and also for viewing the evidence which the sheriff had that might have provided a legitimate reason for calling the grand jury. Ex parte communication with a judge by law enforcement before calling a special grand jury is not unlike the ex parte communication of law enforcement with a judge before the issuance of a warrant. It was not inappropriate for Judge Alred to watch the videotape of the investigation. It was his duty. The majority opinion misguides circuit judges as to their duties regarding special grand juries.

One charge condemns Judge Alred for urging the criminal investigation of two defendants suspected of illegal gambling. The two were indicted, but he dismissed the charges upon agreement of the parties. On the surface, it doesn't look good. But when examined closely, it was totally innocuous. No defense lawyer ever asked for his recusal, and he dismissed the indictment long before it proceeded to any critical stage of the proceeding. It appears to me to show a total lack of bias concerning the two parties in that he agreed to dismiss the charges.

Let's place this holding against Judge Alred in a much larger context. Canon 3(E)(1)(a) and KRS 26A.015 provide that a judge shall recuse himself in any proceeding in which he has a personal bias concerning a party or where he has knowledge of any other circumstance in which his impartiality might reasonably be questioned. On a daily basis in this state, trial judges sitting in drug courts find defendants have violated probation by consuming illegal drugs. As a result, the judges terminate the defendants' drug court status. Yet, these same judges then proceed to sit in subsequent revocation hearings which are based on the same misconduct. I cannot think of a situation where a trial judge has more "knowledge of any other circumstances in which his impartiality might reasonably be questioned" than this. Yet, such a practice has been upheld by the Ethics Committee of the Kentucky Judiciary as not violating KRS 26A.015, the statute under which Judge Alred has been condemned. *See* FORMAL JUDICIAL ETHICS OPINION JE–122. Judge Alred's specific conduct in this case seems far less fraught with potential for bias.

Other misconduct includes obvious overreaching and inappropriate use of his judicial influence. His appearance before the fiscal court to direct that drug money donated by drug offenders in his court be used for a water park for the community,

or at least for "youth programs and facilities," was not acceptable behavior by a judge. And neither was ordering that the use of monies donated by a criminal defendant to the fiscal court for the purpose of alleviating drug abuse in Harlan County be subject to his veto. But these acts do not merit removal from office.

Judge Alred has blundered. And he has blundered to a serious degree. Like all the others on this Court, I do not condone much of his behavior. I especially join the majority in their condemnation of his reaction to the recusal affidavit and the apparent retaliatory calling of the grand jury. This offends me greatly. For this he deserves not only rebuke, but punishment. For his other mishandling of judicial authority, he deserves rebuke. For his wrongdoing, I recommend sixty days suspension without pay. As to our rebuke, I leave that to the electorate to decide.

My brothers and sisters on this Court have agonized mightily over the removal of Judge Alred from office. For this, I respect them. But only two of us stand against the disenfranchisement of almost 30,000 citizens of Harlan County, Kentucky by invalidating their selection for circuit judge. His removal is without benefit of even a criminal charge, let alone the conviction of "high Crimes and Misdemeanors." And without benefit of an election which looms just two years away.

To this, I strongly dissent.

SCOTT, J., joins.